# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

MICHAEL SIZEMORE, *et al.*, on behalf of
themselves an all others similarly situated,

                *Plaintiffs*,             CASE NO.: 1:23-cv-24481-RKA

v.

CRISTIANO RONALDO,

                *Defendant*.

_____/

### DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

    Jurisdictional Facts................................................................................................2

    Plaintiffs' Allegations as to Ronaldo ...................................................................3

    The Binance Platforms and Their Terms of Use Mandating Arbitration ............5

LEGAL STANDARDS ........................................................................................................6

    Personal Jurisdiction Standard.............................................................................6

    Failure to State a Claim Standard ........................................................................7

ARGUMENT ........................................................................................................................8

I.     The Court Lacks Personal Jurisdiction Over Ronaldo.........................................8

    A.     The Court Lacks General Jurisdiction Over Ronaldo Under Florida's Long-Arm Statute Because Ronaldo Is Not Domiciled In Florida..................................8

    B.     The Court Lacks Specific Jurisdiction Over Ronaldo Under Florida's Long Arm Statute ..........................................................................................................9

           i.     *Plaintiffs Fail to Sufficiently Allege Personal Jurisdiction Over Ronaldo Under Section 48.193(1)(a)(2), Fla. Stat.* ....................................9

           ii.    *Plaintiffs' Cannot Rely on Their Conspiracy Claim Because Plaintiffs Have Failed to Plausibly Allege an Actionable Conspiracy* ...................11

    C.     Exercising Jurisdiction Over Ronaldo Would Violate His Due Process Rights ..................................................................................................................12

           i.     *Relatedness* ............................................................................................12

           ii.    *Purposeful Availment* ............................................................................12

           iii.   *Traditional Notions of Fair Play and Substantial Justice* .........................14

II.    Plaintiffs Lack Article III Standing.....................................................................15

**TABLE OF CONTENTS—CONTINUED**

Page

III.   The Complaint Fails to State a Claim for Relief ................................................... 19

    A.   Plaintiffs Fail to State A Claim Under State Securities Laws ............................. 19

        i.   *Plaintiffs Have Not Sufficiently Alleged that Ronaldo Has Participated or Materially Assisted in the Sale of the Alleged Unregistered Securities* ............................................................ 20

        ii.   *Plaintiffs Likewise Fail to State a Claim for Violation of California and Colorado Securities Law for Fraud in Connection with Sale of Alleged Securities* ............................................................ 22

        iii.   *Plaintiffs Have Not Sufficiently Alleged that Ronaldo Can Be Liable Under the FSIPA* ............................................................ 23

    B.   Plaintiffs' Fraud-Based Claims Fail to Meet Rule 9(b)'s Heightened Pleading Requirement ............................................................ 24

    C.   Plaintiffs Fail to State A Claim Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ............................................................ 26

    D.   Plaintiffs Fail to State A Claim for Violations of California's Unfair Competition Law, Business & Professions Code (UCL), § 17200, *et seq.* .......... 27

    E.   Plaintiffs Fail to State A Claim Under the Colorado Consumer Protection Act ("CCPA") ............................................................ 28

        i.   *Plaintiffs' CCPA Claims Are Preempted By The CSA* ............................... 28

        ii.   *Plaintiffs Fail to Sufficiently Allege the Required Elements of a CCPA Claim* ............................................................ 29

    F.   Plaintiffs Fail to State A Claim for Civil Conspiracy ............................................ 30

    G.   Plaintiffs Fail to State A Claim for Conversion ................................................... 32

    H.   Plaintiffs Fail to State A Claim for Aiding and Abetting Conversion ................... 32

IV.   The FAA Mandates Arbitration of Plaintiffs' Claims ....................................... 34

    A.   A Valid Arbitration Agreement Exists ................................................. 35

ii

## <u>TABLE OF CONTENTS—CONTINUED</u>

<u>Page</u>

B.     Arbitrable Issues Exist ........................................................................................38

C.     All Questions On Arbitrability, Validity, Scope and Enforceability of the Arbitration Provision Were "Clearly and Unmistakably" Delegated to the Arbitrator..............................................................................................................39

REQUEST FOR HEARING.........................................................................................................40

CONCLUSION..............................................................................................................................40

CERTIFICATE OF SERVICE .....................................................................................................41

iii

Defendant Cristiano Ronaldo dos Santos Aveiro ("Ronaldo"), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) moves the Court for an Order dismissing the Complaint filed by Plaintiffs ("Plaintiffs") for lack of personal and subject matter jurisdiction, failure to state a claim, or, in the alternative, to compel arbitration.

## **INTRODUCTION**

Despite bring a 425-paragraph Complaint allegedly against Ronaldo, in an apparent Freudian slip, Plaintiffs actually state in their Complaint that that they bring "***this class action against Binance***" because Binance "offered and sold unregistered securities to investors . . . ." Compl. ¶ 17 (emphasis added).   Indeed, the gravamen of Plaintiffs' sloppy Complaint is that Binance has "violated federal and state securities laws by illegally conducting unregistered offers and sales of securities to U.S. investors." *Id*. ¶ 97.   The entity Binance, however, is not the same as the individual Ronaldo and Plaintiffs fail to allege sufficient facts to hold Ronaldo liable for any alleged conduct of Binance—for this, and at least three additional reasons, the Court should dismiss Plaintiffs' Complaint.

***First***, Plaintiffs fail to allege any facts to assert personal jurisdiction over a citizen of Portugal, who plays professional soccer in Saudi Arabia, 12,000 miles from the Southern District of Florida, when that player never specifically targeted this jurisdiction with any conduct and none of the named Plaintiffs can establish the necessary contacts to haul this foreign individual into Florida Federal court.  This alone requires dismissal of the Complaint with prejudice.

***Second***, Plaintiffs lack standing.  To satisfy Article III of the U.S. Constitution, Plaintiffs are required to allege that they "suffered an injury in fact that is concrete, particularized, and actual or imminent . . . [which was] caused by the defendant." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Plaintiffs do not come close to satisfying this requirement; they do not allege a concrete injury—let alone one that is traceable to any conduct or statements of Ronaldo.  Without such allegations, the Complaint must be dismissed for lack of standing.

***Third***, Plaintiffs fail to state a claim for relief for each and every one of their causes of action.  Rather than attempt to establish each of the necessary elements for each of their claims, Plaintiffs, instead, copy-and-pasted their causes of action from their other complaint brought against Binance and other defendants, without so much as correcting all of the party names.  Indeed, in Count Eight, for example, Plaintiffs allege that "Binance's"—not Ronaldo's—"conduct was a substantial factor in causing the harm alleged herein . . . ."  Compl. ¶ 419.  Of course,

Ronaldo is not Binance (nor is Binance a defendant in this case).  And in fact, as set forth below, Ronaldo has no contractual relationship to the Binance entities specifically identified in the Complaint.  Plaintiffs' eight other causes of action fare no better, as being barred entirely by well-established case law, expressly preempted, or simply insufficiently pled.  Accordingly, Plaintiffs' shotgun pleading should be dismissed in its entirety pursuant to Rule 12(b)(6).

*Alternatively*, even if the Court ignores the ample case law supporting all of the grounds for dismissal described herein, the Court should not allow Plaintiffs' Complaint to proceed because their claims are subject to a mandatory arbitration provision under the Federal Arbitration Act.

## FACTUAL BACKGROUND

### Jurisdictional Facts

Plaintiffs correctly concede that Ronaldo "is a citizen of Portugal," not the United States or the State of Florida, and that he captains a Saudi Pro League team, "Al Nassr."  Compl. ¶¶ 39, 268.  Aside from that, Plaintiffs' jurisdictional allegations can be organized into two groups—neither of which support personal jurisdiction over Ronaldo.

*First,* the vast majority of Plaintiffs' allegations concerning conduct with any nexus to Florida are related to the alleged conduct *of others—not Ronaldo*.  For instance, Plaintiffs allege that *Binance.US* is located in Florida and received a two-year Florida money transmitter license in Florida under the name BAM Trading Services, Inc.[1]  Compl. ¶¶ 8–9; *id*. ¶ 84 ("In a December 2022 interview, Zhao [a former *Binance* executive] estimated that transaction revenue accounts for approximately 90 percent of *Binance.com's* revenue. A[n] [unspecified] meaningful percentage of that revenue has been and continues to be derived from digital asset derivative transactions entered into by U.S. customers, including customers in Florida.").  Plaintiffs further allege that, "[u]ntil September 2019, *Binance* (as controlled by Zhao) made the Binance.com platform publicly and readily available for trading to customers in Florida.  After that time, . . . *Binance* feigned efforts to exclude U.S. customers from Binance.com[.]" *Id*. ¶ 43.  Finally, Plaintiffs make the conclusory allegation that "[b]y hiring Mr. Ronaldo as spokesperson, partner, and promoter of the company, *Binance* was targeting the people of Florida, in particular, with

---

[1]  Plaintiffs do not, because they cannot, even plausibly allege Ronaldo contracted with this entity.  In fact, he did not.  *See* Exhibit A (Declaration of Ronaldo) at ¶¶ 3–4 (confirming Ronaldo never contracted with any of the numerous entities specifically identified in footnote 1 of the Complaint).

solicitations to invest in **Binance's** products." *Id.* ¶ 300.  But none of these allegations concern Ronaldo's conduct.

*Second*, Plaintiffs' only remaining allegations referencing **Ronaldo's** purported contacts with Florida concern Ronaldo's actions in making certain social media messages and content generally accessible to all individuals globally, on global platforms, which would include in Florida.  *See, e.g.,* Compl. ¶ 39 ("Mr. Ronaldo's promotions [as part of a "**global** advertising campaign"] were published on public websites, television, and social media accounts accessible to plaintiffs nationwide, including in Florida."); *id.* ¶ 298 ("Mr. Ronaldo's promotions were published on public social media accounts accessible to plaintiffs nationwide, including in Florida."); *id.* ¶ 299 ("Mr. Ronaldo is a globally known and famous professional soccer player, who has considerable influence on soccer fans nationwide and is one of the most-followed individuals on social media, with over 849 million followers across Facebook, Instagram, and Twitter. This influence allowed him to direct his unlawful promotions towards plaintiffs in Florida and nationwide.").  None of these allegations even suggest Ronaldo specifically targeted Florida.

Ultimately, the Complaint is telling by what it does not allege: an actual nexus between Ronaldo's conduct, the Plaintiffs, and the forum, as is required to establish personal jurisdiction.  Indeed, not a single one of the named Plaintiffs—from Florida or any other state—is alleged to have been exposed in Florida to Ronaldo's alleged promotions, to have purchased in Florida an asset Ronaldo allegedly promoted, or otherwise to have even been harmed by the alleged promotions in any manner whatsoever in Florida.  *See infra* §§ I.B, II.[2]

**<u>Plaintiffs' Allegations as to Ronaldo</u>**

As alleged by the Plaintiffs, Ronaldo is certainly a world famous soccer player and is recognized as the greatest player of his generation.  Compl. ¶ 39.  Plaintiffs allege that Binance engaged Ronaldo in 2022 to launch a collection of non-fungible tokens ("NFT") featuring Ronaldo (the "Ronaldo NFTs").  *Id.*  Plaintiffs do not allege that the Ronaldo NFTs are unregistered

---

[2]     The lack of allegations supporting jurisdiction are not surprising.  Ronaldo's Declaration, attached as Exhibit A, confirms the absence of a nexus to this forum.  Among many other reasons, Ronaldo confirmed that he has "not personally entered into any contracts with **any** of the entities specifically identified in footnote 1 of Plaintiffs' Complaint."  Ronaldo Decl. ¶ 3.  The scope of his only contract, with a separate foreign company from Seychelles, was to "provide his image for NFT memorabilia." *Id.* ¶ 5.  He also explains that he never specifically targeted Florida consumers, and otherwise totally lacks any conceivable contact with Florida.  *See, e.g., id.* ¶¶ 11, 13–39.

securities, nor do Plaintiffs allege that they purchased any of the Ronaldo NFTs.  *See* Compl.

The crux of Plaintiffs' Complaint is that they were "exposed" to unspecified statements allegedly made by Ronaldo about "the Binance platforms" and, thereafter, Plaintiffs purchased allegedly unregistered (and unspecified) securities from the Binance platforms or elsewhere. Compl. ¶¶ 36–38.  Despite threadbare allegations that Ronaldo allegedly made "misrepresentations and omissions regarding the Binance platforms," *id*., all of the statements to which Plaintiffs were allegedly "exposed" relate not to digital assets generally, but instead, to the Ronaldo NFTs.  *Id.* ¶¶ 273, 278, 281–84.  As pled, the extent of the alleged "representations and omissions" made by Ronaldo include a total of ***eight*** posts made on Ronaldo's Twitter account[3] (the "Tweets") and the inclusion of Binance on Ronaldo's website as one of over a dozen different brands with which Ronaldo works (linking directly to information about the Ronaldo NFTs).  The specific allegations are as follows:

- A November 15, 2022, Twitter post by Ronaldo stating that the "NFT collection is coming on November 18, exclusively on @Binance."  (Compl. ¶ 273);

- A November 18, 2022, Twitter post by Ronaldo regarding the Ronaldo NFTs' availability on Binance's platform (Compl. ¶ 273);

- A June 23, 2022, Twitter post by Ronaldo about "chang[ing] the NFT game with #Binance" (Compl. ¶ 278);

- A June 22, 2023, Twitter post by Ronaldo stating, "Signing limited edition #Binance merch to give exclusively to NFT holders.  Get yours on @binance on July 3" and containing a 15-second video (Compl. ¶ 281);

- A July 14, 2023, Twitter post by Ronaldo wishing Binance "a happy 6th birthday!" (Compl. ¶ 282);

- An August 27, 2023, Twitter post by Ronaldo containing a 19-second video in which Ronaldo takes "a lie detector test" showing that he is telling the truth that he "owns any NFTs."  (Compl. ¶ 283);

- A September 4, 2023, Twitter post by Ronaldo containing a 25-second video in which Ronaldo is asked (i) "Would you trade all of your Champion League winning medals for the World Cup trophy?", (ii) "Will you still be playing at the highest level in your 40's?", and (iii) "Will anyone ever beat your goal-scoring record?" (Compl. ¶ 283);

- An October 11, 2023, Twitter post by Ronaldo regarding a giveaway of a "CR7 ForeverZone Box," part of the Ronaldo NFTs, on Binance's platform (Compl. ¶ 284); and

---

[3]     The social media site X is referred to in the Complaint as "Twitter" and as posts on X as "Tweets."  *See, e.g.*, Compl. ¶¶ 155, 277, 278, 299.  For ease of reference, Plaintiffs' terminology used in their Complaint regarding social media sites and posts is adopted herein.

- The website "www.CristianoRonaldo.com"'s inclusion of Binance as one of sixteen different brands Ronaldo "work[s] with" containing a hyperlink to information about the Ronaldo NFTs  (Compl. ¶ 285).

Notably, other than the handful of Tweets about the Ronaldo NFTs, none of the Tweets pertain to *any digital assets* available on the Binance platforms or any other cryptocurrency trading platform. *See* Compl. ¶¶ 273, 278, 281–85.  Nor do any of the Tweets make any reference to Florida or Florida customers.  *Id*.  And, importantly, *none of the Plaintiffs allege that they purchased a Ronaldo NFT on Binance's platform or elsewhere*.

Additionally, Plaintiffs identify six social media posts allegedly made by Binance—*not Ronaldo*—about Ronaldo and the Ronaldo NFTs, in which Ronaldo is only mentioned or pictured:

- A "60-second advertisement video" posted by Binance on Binance's YouTube channel in November 2022, regarding "Ronaldo's exclusive NFT collection" (Compl. ¶ 272);

- An 11-second video posted by Binance's Twitter account on November 16, 2022, regarding "[t]he first ever @Cristiano Ronaldo NFTs . . . dropping on #Binance on November 18" (Compl. ¶ 273);

- A 60-second video posted by Binance's Twitter account on November 18, 2022, regarding "Ronaldo's exclusive NFT collection" (Compl. ¶ 273);

- A video posted by Binance's Twitter account on June 23, 2022, regarding its "NFT partnership with football legend Cristiano Ronaldo" (Compl. ¶ 277);

- A 7-second video posted on Binance's Twitter account on September 3, 2023, in which Ronaldo is asked if he is "the greatest goal scorer of all time?" (Compl. ¶ 283); and

- A photo of Ronaldo posted on Binance's Twitter account on October 23, 2023, referencing an "[a] once in a lifetime opportunity to train with" Ronaldo (Compl. ¶ 284).

Thus, all of the statements made by Binance featuring Ronaldo relate to either the Ronaldo NFTs (which Plaintiffs do not allege to have ever purchased), or relate to Ronaldo's status as the "greatest goal scorer of all time."  Compl. ¶¶ 272–73, 277, 283–84.

Notwithstanding the fact that Plaintiffs never purchased any Ronaldo NFTs (the only specific digital assets Ronaldo allegedly promoted), Plaintiffs bring nine causes of action against Ronaldo under Florida, California, and Colorado securities and consumer protection statutes, and for civil conspiracy, conversion, and aiding and abetting conversion.  *See generally* Compl.

### The Binance Platforms and Their Terms of Use Mandating Arbitration

Binance "directly oversees" crypto-asset platforms (the "Binance platforms") that allow customers to purchase, invest, and trade cryptocurrency and tokens.  Compl. ¶ 1.  To make any purchases or trades using the Binance platforms, users are required to register and create an account

with Binance.  *See* Exhibit B (Decl. of Christopher Blodgett) at ¶ 15.  In creating an account, users must affirmatively check a box stating, in relevant part, "I have read, understand, and agree to the Binance.US Terms of Use."  *Id*. at ¶ 16.  The words "Binance.US Terms of Use" are hyperlinked to Binance's Terms of Use.  *Id*. at ¶ 17.  Each Plaintiff registered and created an account on the Binance platforms[4] and every version of the Terms of Use applicable since Plaintiffs' registered to use of the Binance platforms includes substantially similar language.  *Id*. at ¶¶ 21–30.

The Terms of Use contain an arbitration provision providing:

> BAM and you agree that any dispute or controversy arising out of or relating to these Terms of the BAM Services, including but not limited to, legal and equitable claims, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation or any other legal theory, shall be resolved through binding arbitration on an individual basis . . . Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA").

*Id*. at ¶¶ 11–12.  The Terms of Use further provide that:

> Any dispute between BAM and You regarding the construction, interpretation, or application of this arbitration provision, including the enforceability, severability, revocability, scope, or validity of this arbitration provision, shall be decided by an arbitrator and not by a court or judge.

*Id*. at ¶ 13.  As with the language indicating that users of Binance's platforms affirmatively check a box consenting to the Terms of Use, every version of the Terms of Use applicable to the time periods Plaintiffs contend they used Binance's platforms included a binding arbitration clause and a delegation clause with nearly identical language as that quoted above.

## LEGAL STANDARDS

### Personal Jurisdiction Standard

"A court must dismiss an action against a defendant over which it has no personal jurisdiction."  *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citation

---

[4]     While Plaintiffs do not allege in their Complaint that they created accounts on Binance's website, they have each submitted sworn declarations to this Court admitting as much.  *See Sizemore et al. v. Zhao et al.*, No. 23-CV-21261 (S.D. Fla.) (Altman, J.) at D.E. 172–2 (Decl. of Plaintiff Mikey Vongdara) ("I began using Binance.US to purchase crypto-assets on January 7, 2021."), D.E. 172–3 (Decl. of Plaintiff Michael Sizemore) ("I began using Binance.US to purchase crypto-assets on August 21, 2021."), D.E. 172–4 (Decl. of Plaintiffs Gordon Lewis) (testifying that he "confirmed [his] registration" for Binance.US on or after April 26, 2023).  In deciding a motion to compel arbitration, "the court may consider matters outside of the four corners of the complaint."  *Capua v. Air Europa Lineas Aereas S.A. Inc.*, No. 20-CV-61438, 2021 WL 965500, at *1 n.4 (S.D. Fla. Mar. 15, 2021); *Banks v. Cashcall, Inc.*, 188 F. Supp. 3d 1296, 1302 (M.D. Fla. 2016).

omitted).  To withstand a motion to dismiss for lack of personal jurisdiction, the plaintiff must first plead a *prima facie* case of jurisdiction over a nonresident defendant.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291–92 (11th Cir. 2000) (holding that district court lacked personal jurisdiction over a foreign defendant).  If the Plaintiffs fail to state a *prima facie* case, the analysis need go no further and the Court may dismiss the action.  *See id.*

A defendant may include affidavits or other evidence in support of a Rule 12(b)(2) motion, rebutting a plaintiff's jurisdictional allegations, which a court may consider in resolving a motion to dismiss for lack of personal jurisdiction.  *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009).  Where, like here, a defendant's declaration proves that he is not subject to long-arm jurisdiction, the burden shifts to the plaintiff to substantiate its jurisdictional allegations through sworn statements of its own—merely reiterating the factual allegations in the complaint are insufficient.  *Id*.  If the plaintiff fails to satisfy his burden of rebutting the defendant's declaration, the complaint brought against the defendant must be dismissed for lack of personal jurisdiction.  *Id*.

Importantly, the Florida long-arm statute "must be strictly construed" and "***any doubts about applicability of the statute must be resolved in favor of the defendant and against a conclusion that personal jurisdiction exists***."  *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1140 (S.D. Fla. 2019) (citations omitted) (emphasis added).

## Failure to State a Claim Standard

To survive a motion to dismiss, a plaintiff must allege facts sufficient to show that the recovery plaintiff seeks is plausible, not merely conceivable.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Mere recitation of the elements of the cause of action and unsupported allegations of an implausible factual theory are insufficient. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Coleman v. McGhee*, No. 21-12557, 2022 WL 217578, at *1 (11th Cir. Jan. 25, 2022)And while the Court must accept a plaintiff's well-pleaded facts as true, it need not accept  "conclusory allegations" or "unwarranted deductions of fact[]," *Oxford Asset Mgmt., Ltd., v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2022).  Indeed, on a motion to dismiss, the Court should ignore "legal conclusion[s] couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quotations omitted); *see also Coleman*, 2022 WL 217578, at *1 ("A district court

may ignore conclusory allegations, unwarranted factual deductions, and legal conclusions masquerading as facts.").

## ARGUMENT

### I.      The Court Lacks Personal Jurisdiction Over Ronaldo

Ronaldo is a nonresident defendant who is not subject to personal jurisdiction before this Court.  Sufficient jurisdictional facts must be pleaded to subject a foreign defendant, like Ronaldo, to general or specific jurisdiction under Florida's long-arm statute, and also to satisfy federal due process requirements. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).  Here, Plaintiffs fail to satisfy any and all of these requirements: they cannot establish general or specific jurisdiction, nor can they satisfy the Fourteenth Amendment's due process requirements.

### A.      The Court Lacks General Jurisdiction Over Ronaldo Under Florida's Long-Arm Statute Because Ronaldo Is Not Domiciled In Florida

Plaintiffs first attempt to assert general jurisdiction by alleging that Ronaldo "conducts substantial and not isolated business in Florida[.]"  Compl. ¶ 41.  This is insufficient.  It is black-letter law that general jurisdiction may only be asserted over an individual-defendant in his domicile.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."); *see also, e.g.*, *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1291 (S.D. Fla. 2021) (holding that "[i]t is well-established, therefore, that for individuals, general jurisdiction is limited to the individual's domicile." And granting motion to dismiss for lack of jurisdiction, with prejudice, where it was undisputed that the defendant "[d]oes not reside in Florida . . . [and] has been residing in Dubai, United Arab Emirates.") (collecting cases).[5]  An individual-defendant may be "domiciled" where

---

[5]      *See, e.g.*, *easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062, 2020 WL 5500695, at *14 (S.D. Fla. Sept. 11, 2020) (concluding court did not have general jurisdiction over an individual because he was a citizen and resident of Colombia who was not served in and did not consent to Florida jurisdiction); *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) (concluding general jurisdiction over the defendant was lacking because he was a citizen of Brazil and Italy, was a resident of France, and was neither served in nor consented to Florida jurisdiction); *Mar. Exec., LLC v. Larson Elecs., LLC*, No. 17-CV-60323, 2018 WL 2938376, at *3 (S.D. Fla. Jun. 11, 2018) (finding no general jurisdiction where the defendant was "a resident of Texas, [and] [ ] was not served in and did not consent to jurisdiction in Florida." (alterations added)); *Dohler S.A. v. Guru*, No. 16-23137, 2017 WL 4621098, at *4 (S.D. Fla. Oct. 16, 2017) (stating general jurisdiction was improper because the defendants were "both residents of North Carolina, [and] were not served in and did not consent to jurisdiction in Florida.").

he is a citizen or where he resides.  *See id.*

Plaintiffs do not allege that Ronaldo is a citizen or resides in Florida.  Instead, Plaintiffs readily concede in their Complaint that Ronaldo "is a citizen of Portugal" who works in Saudi Arabia where he "captains the Saudi Pro League club Al Nassr." Compl. ¶¶ 39, 268.  In fact, in reporting on their futile efforts to serve process, Plaintiffs' counsel reported to this Court via sworn affidavit that, "***it is clear [Ronaldo] does not reside within the United States***."  ECF No. 12-1.[6] Plaintiffs cannot make even a *prima facie* showing of general jurisdiction.  Ronaldo, therefore, is not subject to this Court's general jurisdiction.[7]

### B.    The Court Lacks Specific Jurisdiction Over Ronaldo Under Florida's Long-Arm Statute

Plaintiffs also attempt, but fail, to assert specific jurisdiction over Ronaldo.  Compl. ¶ 41 (alleging Ronaldo "intentionally availed himself of the Florida consumer market through the promotion, marketing, and sale of unregistered securities in Florida—including to Plaintiffs in this case—which constitutes committing a tortious act within the state of Florida").  Specific jurisdiction under Florida's long-arm statute requires that a plaintiff demonstrate that his cause of action "arises from" the defendant "committing a tortious act within the state."  Fla. Stat. § 48.193(1)(a)(2).  Put differently, there must exist a sufficient nexus between a defendant's tortious conduct in Florida, and the plaintiff's claims.  Here, no such tort and no such nexus exists.

#### i.    *Plaintiffs Fail to Sufficiently Allege Personal Jurisdiction Over Ronaldo Under Section 48.193(1)(a)(2), Fla. Stat.*

As a threshold matter, Plaintiffs have not established specific jurisdiction under Fla. Stat. § 48.193(1)(a)(2) because they have not adequately pleaded that Ronaldo committed a tort—let alone a tort in Florida.[8]  *See infra.* § III.  This alone defeats a claim of specific jurisdiction.

---

[6]    Plaintiffs' counsel's other sworn statements in this referenced affidavit likewise support Ronaldo's lack of domicile in Florida.  *See* ECF No. 12-1 ("Ronaldo was known to reside at the Four Seasons Hotel Riyadh At Kingdom Center in Saudi Arabia," and that, "Ronaldo reportedly owns homes in Madeira, Madrid, Marbella, La Finca, Lisbon, and Torino, [but not in the United States].").

[7]    Nor could Plaintiff amend its allegations to state otherwise.  Ronaldo avers in his attached Declaration that he is a citizen of Portugal, a resident of the Kingdom of Saudi Arabia, and that he has never been a resident of the State of Florida.  Ronaldo Decl. ¶¶ 13–18.

[8]    And any allegations concerning the acts of others, such as non-party, Binance, cannot be attributed to Ronaldo so as to establish jurisdiction over him.  *Madara v. Hall,* 916 F.2d 1510, 1516 (11th Cir. 1990); *see also Miro v. Doe,* No. 22-80399, 2023 WL 2734374, at *4 (S.D. Fla. Mar. 31, 2023) (dismissing claims against Binance Holdings Ltd. for lack of both general and

Yet even if Plaintiffs could set forth the elements for a tort committed by Ronaldo in Florida (they cannot), Plaintiffs have not established an actual nexus between Ronaldo's alleged conduct, the Plaintiffs, and the forum, as is required.[9]  Indeed, not a single named Plaintiff—from Florida or any other state—is alleged to have (i) seen in Florida Ronaldo's alleged promotions, (ii) purchased in Florida an asset Ronaldo allegedly promoted, or (iii) been harmed by the promotions in any manner whatsoever in Florida.  *See generally* Compl.  Courts routinely dismiss claims for lack of personal jurisdiction with similarly vague allegations where purchases are at the core of the allegations.  *See Hinkle v. Cirrus Design Corp.,* 775 F. App'x 545, 550 (11th Cir. 2019) (no personal jurisdiction where plaintiff failed to show that purchase was in any way connected to Florida); *Schrier v. Qatar Islamic Bank,* 632 F. Supp. 3d 1335, 1352-53 (S.D. Fla. 2022) (no personal jurisdiction where plaintiff failed to show defendants' purchase occurred in Florida); *Perry v. Ryan,* No. 22-CV-2752, 2023 WL 2403889, at *3 (M.D. Fla. Mar. 8, 2023) ("[T]he complaint does not allege specific factual events or transactions involving Defendants that occurred in Florida.").

According to the Complaint, only one of the three named Plaintiffs is a citizen and resident of the State of Florida.  *See* Compl. ¶ 37 ("Plaintiff Mikey Vongdara is a citizen and resident of the State of Florida.").  Crucially, Mr. Vongdara does not allege that he purchased the assets Ronaldo allegedly promoted (the Ronaldo NFTs) or that he purchased any assets as a consequence of having seen any of Ronaldo's alleged promotions.[10]  Nor do Plaintiffs identify any damages

---

specific personal jurisdiction).

[9]  Moreover, there are no ***plausible*** allegations that Ronaldo targeted Florida at all in any of his marketing materials.  *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (court need only accept "well-pleaded facts").  Plaintiff only alleges that "Mr. Ronaldo's promotions were published on public websites, television, and social media accounts accessible to plaintiffs nationwide, including Florida." Compl. ¶ 39.  The only fact pleaded in support of this allegation are references to a limited number of Tweets posted by Ronaldo on the global Twitter platform, which have no reference to Florida whatsoever, as would be required for long-arm jurisdiction.  Compl. ¶ 278.  As set forth in more detail below, these allegations are insufficient to confer long arm jurisdiction.  *See infra* § I.C.

[10]  The closest the Plaintiffs come to alleging causation is that the Plaintiffs "purchased . . . securities . . . ***after being exposed*** to some of all of Defendant's [unspecified] misrepresentations and omissions" and "executed trades" "***after those [unspecified] misrepresentations and omissions were made***." Compl. ¶¶ 37.  A sequence in time does not make causation.  *See infra* § II, for further discussion on how there is no injury alleged to be fairly traceable to Ronaldo's alleged conduct.

sustained as a result of  Ronaldo's alleged conduct, let alone any damages sustained *in Florida*. *See* Compl. ¶¶ 36-38.  Far from it.  Plaintiffs explicitly concede that the only Florida-resident Plaintiff "did <u>not</u> purchase any of the unregistered securities from any Binance platform[.]"  *See* Compl. p.16, n.16. (emphasis in original).

With no tort, causation, or injury in Florida, there cannot be jurisdiction over Ronaldo for "committing a tortious act within the state." Fla. Stat. § 48.193(1)(a)(2).

### ii.   *Plaintiffs Cannot Rely on Their Conspiracy Claim Because Plaintiffs Have Failed to Plausibly Allege an Actionable Conspiracy*

To the extent Plaintiffs contend that Ronaldo committed the tort of "conspiracy" in Florida, Plaintiffs do not say so in their Complaint.  And even if Plaintiffs did, such an allegation would be insufficient to establish personal jurisdiction because a claim for "conspiracy" is not an independent tort, nor has it been plausibly pled.[11]  *See infra.* § III.F.  Courts in Florida will "decline to apply the co-conspirator theory to extend jurisdiction over nonresidents if the plaintiff fails to plead with specificity any facts supporting the existence of the conspiracy and provides nothing more than vague and conclusory allegations regarding a conspiracy involving the defendants." *Oueiss v. Saud*, No. 20-CV-25022, 2022 WL 1311114, at *14 (S.D. Fla. Mar. 29, 2022) (granting motion to dismiss for lack of personal jurisdiction over Saudi Crown Prince).  The Eleventh Circuit has held that when a plaintiff has not plausibly pled a conspiracy, the plaintiff cannot use the conspiracy claim as a basis for long-arm jurisdiction.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1283 (11th Cir. 2009) ("In sum, the complaint does not allege viable facts from which the inference could reasonably be drawn that APM was part of a conspiracy either engineered in Florida or pursuant to which a tortious act in furtherance was committed in Florida.  Thus, APM is not subject to conspiracy-imputed personal jurisdiction under Florida's long-arm statute.").  The Court should hold the same here.[12]

---

[11]    "Conspiracy" in Florida is not a tort in itself but rather requires a separate underlying wrong.  *See Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018) (holding that Florida law "does not recognize civil conspiracy as a freestanding tort").

[12]    Even if there was a viable conspiracy claim, which there is not, it would not connect Ronaldo to any entity over whom this Court has personal jurisdiction as Courts in this District have already held that they lack personal jurisdiction over other foreign "Binance" entities.  *See, e.g., Miro*, 2023 WL 2734374, at *3  (dismissing claims against Binance Ltd. for lack of [general and specific] personal jurisdiction); *see also*, *Zhao*, No. 23-CV-21261 (arguing for dismissal for lack of personal jurisdiction over foreign Binance-affiliated defendants).

### C.        Exercising Jurisdiction Over Ronaldo Would Violate His Due Process Rights

Even if Plaintiffs could establish the elements of the Florida long-arm statute (they have not and cannot), the Court should still dismiss the Complaint because retaining jurisdiction over Ronaldo would violate due process.  To determine whether the exercise of specific jurisdiction affords due process to a defendant, the Eleventh Circuit set forth a three-part test, examining whether: (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefit of the forum state's laws; and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). (citations omitted).  "The plaintiff bears the burden of establishing the first two prongs." *Id.* (citation omitted).

#### i.        Relatedness

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotation marks and citation omitted).  As set forth *supra*, there are no plausible allegations that the Plaintiffs claims arise out of Ronaldo's contacts with Florida.  *See supra* pp. 9–11.  Additionally, and crucially, he had no contacts with the forum.  *Id.*

#### ii.       Purposeful Availment

As to the second prong, in intentional tort cases, courts apply the "effects test" established in *Calder v. Jones*, 465 U.S. 783 (1984) to determine whether there was "purposeful availment" by the defendant.  *Louis Vuitton*, 736 F.3d at 1356.  Under the effects test, only if a defendant (1) committed an intentional act, (2) which was directly aimed at the forum state, and which (3) caused harm that the defendant should have anticipated would be suffered in the forum state, may due process be satisfied such that the defendant is subject to the jurisdiction of the forum state.  *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009) (citing *Calder*, 465 U.S. at 789-90).  Plaintiffs fail to satisfy the effects test.[13]

---

[13]        *See also Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008); *PG Creative Inc. v. Affirm Agency, LLC*, No. 18-CV-24299, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019) (applying effects test and rejecting conclusory allegations, holding plaintiff had not established

While Plaintiffs have pled "intentional acts" by Ronaldo, namely, that he posted the Tweets, *see, e.g.*, Compl. ¶¶ 273, 278, 281, they have failed to establish that those acts were directed at Florida. Indeed, Plaintiffs do not (and cannot) demonstrate that the handful of Ronaldo's Tweets at issue were directed at Florida, targeted Twitter accounts of users located in Florida, or were otherwise only viewable by Florida residents. *See* Ronaldo Decl. ¶ 11 ("None of my posts referenced in the Complaint make any references, expressly or impliedly, to Florida or Florida residents."). Instead, Plaintiffs allege only that Ronaldo's Tweets were accessible to individuals in the United States, including Florida. *See, e.g.,* Compl. ¶ 39 ("Mr. Ronaldo's [global advertising campaign] promotions were published on public websites, television, and social media accounts accessible to plaintiffs nationwide, including in Florida."); *id*. ¶ 298 ("Mr. Ronaldo's promotions were published on public social media accounts accessible to plaintiffs nationwide, including in Florida."); *id*. ¶ 299 ("Mr. Ronaldo is a globally known and famous professional soccer player, who has considerable influence on soccer fans nationwide and is one of the most-followed individuals on social media, with over 849 million followers across Facebook, Instagram, and Twitter. This influence allowed him to direct his unlawful promotions towards plaintiffs in Florida and nationwide."). But mere "accessibility" of content in a forum is insufficient to establish minimum contacts or purposeful availment and courts routinely grant motions to dismiss for lack of personal jurisdiction on similar facts. *See, e.g., Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1373–75 (S.D. Fla. 2019) (dismissing for lack of personal jurisdiction, explaining that "courts have ***uniformly rejected*** the argument that a [T]weet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause"); *Toll v. North,* 644 F. Supp. 3d 1050, 1055 (S.D. Fla. 2022) (dismissing for lack of personal jurisdiction where plaintiff merely alleges that Defendant's online campaign of defamation was "directed, **in part**, toward Florida web browsers and, in particular, Florida casinos and gaming communities" and holding that, "in other words, Defendant's conduct was **partly** directed at Florida, and ***partly directed at everywhere else in the world with internet access***. This is clearly not the type of 'express aiming' that would satisfy the effects test.") (bold emphasis in original) (bold italics added); *Saud,* 2022 WL 1311114, at *24 (dismissing for lack of personal jurisdiction, and holding that Florida long-arm jurisdiction requires more than tweets

---

defendants purposefully availed themselves of the forum).

being merely accessed in the state).[14]

Plaintiffs also fail to establish that Ronaldo's alleged Tweets caused harm that he should have anticipated would be suffered in Florida.  Indeed, Plaintiffs have not pled any facts that would suggest Ronaldo had "any reason to believe the 'brunt' of Plaintiff's injury would be felt in Florida." *Miller*, 383 F. Supp. 3d at 1373.  Ronaldo's Declaration supports this.  Ronaldo Decl. ¶ 11 ("None of my posts referenced in the Complaint make any references, expressly or impliedly, to Florida or Florida residents."); *see also supra* pp. 9–11.  Without alleging any facts that would demonstrate Ronaldo should have anticipated that his Tweets would have caused harm in Florida, Plaintiffs cannot satisfy the effects test.  *See Shames*, 2017 WL 7798664, at *3 n.4; *Toll,* 644 F. Supp. 3d at 1055; *Interstellar Prods., Inc.*, 576 F. Supp. 3d at 1111.

### iii.     Traditional Notions of Fair Play and Substantial Justice

Because Plaintiffs fail to meet their burden of establishing purposeful availment, the burden does not shift to Ronaldo to show the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355.  Nevertheless, this prong also weighs in favor of dismissal.

Courts look to five factors in evaluating whether exercising jurisdiction comports with fair play and substantial justice: (i) the burden on the defendant, (ii) the forum state's interest in adjudicating the dispute, (iii) the plaintiff's interest in obtaining convenient and effective relief, (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (v) the shared interest of several states in advancing fundamental substantive social policies.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (citations

---

[14]     *See also, Interstellar Prods., Inc. v. Bush*, 576 F. Supp. 3d 1106, 1111 (M.D. Fla. 2020) (dismissing for lack of personal jurisdiction where sole allegations connecting defendant to forum were that agents (but not defendant) were in contact with Florida corporation "via telephone and email" to negotiate her appearance at a convention); *Bioheart, Inc. v. Peschong*, No. 13-60304-CIV, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (finding defendant who posted allegedly defamatory statements about plaintiff on website message board did not purposefully direct his tortious acts toward Florida because there was "no reason for [defendant] to have thought that Bioheart's investors would be located in Florida, as opposed to any other state"); *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010) (dismissing libel suit for lack of personal jurisdiction where there was no evidence "showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience"); *Sovereign Offshore Servs., LLC v. Shames*, No. 17-CV-80172, 2017 WL 7798664, at *3 n.4 (S.D. Fla. Aug. 3, 2017) (holding "Defendant's awareness that consumers across the nation may access his blog posts is not enough to support the exercise of personal jurisdiction").

omitted).   A "primary concern of the fairness test is the burden placed on . . . international defendants[.] [C]ourts should consider the unique burdens placed upon one who must defend oneself in a foreign legal system." *Oldfield*, 558 F.3d at 1221 (internal quotation marks and citation omitted).  These factors weigh against a finding of jurisdiction.

As Plaintiffs concede, Ronaldo works and resides 12,000 miles, and seven time zones, away. Compl. ¶¶ 39, 268.  Even much less onerous burdens have been found to violate traditional notions of fair play and substantial justice so as to defeat personal jurisdiction.  *See, e.g., Frida Kahlo Corp. v. Pinedo*, No. 18-21826-CIV, 2021 WL 4147876, at \*6 (S.D. Fla. Sept. 13, 2021) (finding exercise of jurisdiction in Florida would offend "fair play and substantial justice" where, among other reasons, defendants resided 1,300 miles away in Mexico City); *DiMaggio, LLC v. City, Cnty. of San Francisco*, 187 F. Supp. 2d 1359, 1371 (S.D. Fla. 2000) (holding traditional notions of fair play and substantial justice were offended because, "the burden on San Francisco to travel 3,000 miles to litigate this action is *severe*") (emphasis added); *Vision Media TV Grp., LLC*, 724 F. Supp. 2d at 1267 (holding traditional notions of fair play and substantial justice were offended because burden for North Carolina operator to defend itself in Florida lawsuit was too high).[15]  Accordingly, any exercise of jurisdiction by this Court over Ronaldo would offend due process.

Plaintiffs' Complaint fails to plead a *prima facie* basis for personal jurisdiction, and the Court need look no further than the face of the Complaint.  But even if it did, Ronaldo's Declaration and related factual challenge further underscores that conclusion.

## II.   Plaintiffs Lack Article III Standing

The "irreducible constitutional minimum of standing" must be satisfied in order for a plaintiff to bring an action in federal court.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  And even where Congress has created a legal cause of action, "it may not simply enact an injury into existence." *TransUnion*, 594 U.S. at 426.  Rather, to establish Article III standing, a plaintiff must demonstrate (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a

---

[15]     Other factors also weigh against this forum having an interest in the instant case.  First, Plaintiffs are seeking identical relief on copy and paste allegations in a separate action from different parties.  Second, Plaintiffs set forth no allegations demonstrating any particular interest of courts in Florida in adjudicating this action.  Indeed, he did not contract with a Florida company and the Tweets at issue plainly did not target Florida customers.  Ronaldo Decl. ¶¶ 4, 11.

favorable decision. *Lujan*, 504 U.S. at 560–561. "The plaintiff has the burden to 'clearly and specifically set forth facts sufficient to satisfy Art. III standing requirements.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005) (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n,* 226 F.3d 1226, 1229–30 (11th Cir. 2000)). Here, Plaintiffs have failed to do so.

     ***First***, Plaintiffs fail to allege that they suffered an "injury in fact that is concrete, particularized, and actual or imminent . . . ." *TransUnion*, 594 U.S. at 423. The gravamen of Plaintiffs' Complaint is that they were "exposed" to statements allegedly made by Ronaldo "regarding the Binance platforms" and, at some point after such "exposure," they purchased digital assets on Binance's platforms or elsewhere. Compl. ¶¶ 36–38. Plaintiffs do not identify what "harm" they suffered as a result of any such "exposure." The only "harm" that can be reasonably deduced from the Complaint is that the unidentified digital assets Plaintiffs claim to have purchased allegedly should have been registered as securities but were not. *Id.* But this, without more, is not a concrete injury. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (affirming dismissal for lack of standing and noting, "[a]n injury is concrete if it actually exists—that is, if it is real, and not abstract.") (citations and quotations omitted); *Uberoi v. Labarga*, 769 F. App'x 692, 697 (11th Cir. 2019) ("The Court should not speculate concerning the existence of standing."). For example, ***Plaintiffs do not allege that they overpaid for the assets, or sustained losses, because of the assets' alleged unregistered status***. Such failure to clearly allege a concrete and particularized injury fails to establish Article III standing. *See Colceriu v. Barbary*, 543 F. Supp. 3d 1277, 1280 (M.D. Fla. 2021) ("The plaintiff must clearly and specifically set forth facts showing an injury-in-fact; conclusory allegations will not suffice.") (citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020)); *Klayman v. President of United States*, 689 F. App'x 921, 924 (11th Cir. 2017) ("[I]t is insufficient that [plaintiff] set forth facts from which we could imagine an injury sufficient to satisfy standing requirements because we will not speculate concerning the existence of standing.").

     ***Second***, even if Plaintiffs sufficiently alleged an injury-in-fact (they have not), Plaintiffs have not alleged any causal connection between such an injury and any of Ronaldo's alleged conduct. To show a required "causal connection," Plaintiffs' "injury must be 'fairly ... trace[able]' to the defendant's conduct, as opposed to the action of an absent third party." *Lewis v. Governor*

16

*of Alabama*, 944 F.3d 1287, 1296 (11th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560).  Traceability, as a threshold requirement for standing, "is determined as of the time the complaint is filed." *Gomez v. Dade Cnty. Fed. Credit Union*, No. 13-23882-CIV, 2014 WL 1217965, at *1, 4 (S.D. Fla. Mar. 24, 2014) (quotations and citations omitted).

Plaintiffs have asserted no traceability between an injury that they suffered and any conduct of Ronaldo.  The Complaint's specific allegations asserted against Ronaldo pertain to his (i) Tweets about the availability of the Ronaldo NFTs on Binance's platform, (ii) "partnership" with Binance regarding the Ronaldo NFTs, and (iii) appearance in promotional materials for Binance posted by Binance on its social media platforms.  *See* Compl. ¶¶ 269–300.  Specifically, Plaintiffs allege that they were "exposed to some or all" of Ronaldo's "misrepresentations and omissions regarding the Binance platforms,"[16] and then, at some point after such "exposure," they purchased alleged unregistered securities either on Binance's platforms or elsewhere.  *Id*. ¶¶ 36–38.  Yet nowhere in the Complaint do Plaintiffs set forth any non-conclusory factual allegations that their "exposure" to any of Ronaldo's Tweets ***caused*** Plaintiffs to purchase any allegedly unregistered securities (from the Binance platforms or elsewhere).[17]  *See id*.  Rather, Plaintiffs allege only that, chronologically, their alleged "exposure" to Ronaldo's Tweets occurred ***before*** they "purchased, repurchased, invested, and/or reinvested" alleged securities.  *Id*.  Such vague allegations do not plead the required "causal connection" between Plaintiffs' purchases and Ronaldo's Tweets.  *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1304 (11th Cir. 2006) ("To demonstrate Article III standing, a plaintiff must show that the conduct of which he complains has ***caused*** him to suffer an injury in fact") (emphasis added) (citation and quotations omitted); *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1231 (11th Cir. 1999) (affirming dismissal for lack of standing where plaintiffs failed to allege a

---

[16]     Plaintiffs' allegation that Ronaldo made "representations and omissions regarding the Binance platforms," Compl. ¶¶ 36–38, is belied by the Complaint itself.  Nowhere in the Complaint do Plaintiffs identify a single representation by Ronaldo about Binance's platforms, other than the representation that the Ronaldo NFTs would be available on the Binance platforms.  *See* Compl. ¶¶ 273, 278, 281–84.  For the reasons discussed herein, *infra* §§ III.C-E, Plaintiffs do not allege that such a representation was unlawful, false, or deceptive.

[17]     For example, Plaintiffs have not pled how a post on Ronaldo's social media account announcing the launch of the Ronaldo NFTs on ***Binance's platforms*** somehow caused Plaintiff Lewis to purchase alleged unregistered securities from ***Crypto.com*** (an entirely separate platform)—particularly when there are no allegations that Ronaldo has made any "misrepresentations and omissions" about Crypto.com.  Compl. ¶ 38.

"sufficient connection" between defendant's conduct and the "effect of" that conduct on plaintiff); *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) ("A plaintiff must at least demonstrate ***factual*** causation between his injuries and the defendant's misconduct.") (emphasis in original).

The tenuousness of Plaintiffs' theory of causation as to Ronaldo is underscored by the fact that each of the three named Plaintiffs in this case has previously asserted the exact same (cut-and-paste nearly whole cloth) allegations against nearly a dozen other entities and individuals in separate actions. *See, e.g., Zhao*, No. 23-CV-21261 (S.D. Fla.) (Altman, J.), D.E. 100, ¶¶ 20, 22-23 (Plaintiffs "purchased, repurchased, invested, and/or reinvested unregistered securities" "after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Binance platforms"). This begs the question of causation between any alleged injuries suffered by Plaintiffs in this case and the alleged conduct of the defendants in the *Zhao* case. *See Walters*, 60 F.4th at 650 (Article III traceability is lacking if "the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct.") (citations and quotations omitted).

Tellingly, none of the Plaintiffs allege that they actually purchased the Ronaldo NFTs — the only assets allegedly promoted by Ronaldo in the social media posts at issue in Plaintiffs' Complaint. *See* Compl. ¶¶ 273, 281; *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("There's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by class members who ***never*** said to Telecel they didn't want to be called again.") (underline emphasis in original; bold emphasis added). As in *Cordoba*, there can be no "causal chain" linking Ronaldo's Tweets about the Ronaldo NFTs with Plaintiffs' purchasing of alleged unregistered securities when none of Ronaldo's social media posts related to any of the assets Plaintiffs allegedly purchased.

Without pleading a causal link between any concrete injuries and alleged conduct of Ronaldo, Plaintiffs' entire theory of liability appears to rest on Plaintiffs' allegations that: "[t]he more people Mr. Ronaldo drove to use the Binance platform generally, the more lucrative his NFT projects was [sic] likely to be, as people already invested in Binance and NFTs would be more likely to buy Mr. Ronaldo's NFTs." Compl. ¶ 289. Put differently, according to Plaintiffs, because Ronaldo allegedly promoted the Ronaldo NFTs, unidentified people may have signed-up to use the Binance platforms, and once those unidentified people signed-up to use the Binance platforms, some unidentified portion of those people would be "more likely" to purchase unidentified assets through the Binance platforms. Compl. ¶¶ 276, 289, 410. Plaintiffs' farfetched theory not only

strains credulity, but also fails to establish the required causation to satisfy Article III standing. *See Louis v. Bluegreen Vacations Unlimited, Inc.*, No. 21-CV-61938, 2022 WL 2340958, at *6 (S.D. Fla. May 13, 2022) (holding plaintiffs lacked Article III standing because they "failed to plausibly allege that the alleged violations of the [Military Lending Act] [by Defendants] even had any *indirect* impact on Plaintiffs' decision to pursue their transaction with Defendants") (emphasis in original). Indeed, while Plaintiffs' theory of liability relies on assumed conduct of unidentified people, ***none of the Plaintiffs allege that they were persuaded by Ronaldo's Tweets to sign-up for Binance and thereafter purchased crypto-assets as a result of those tweets***. This is plainly insufficient. *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014) ("[I]n the Eleventh Circuit, a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase.'") (quoting *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013)); *In re Westport Holdings Tampa, Ltd. P'ship*, No. 21-11767, 2022 WL 964962, at *3 (11th Cir. Mar. 31, 2022) ("Standing cannot rely 'on a highly attenuated chain of possibilities' or speculation.") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–14 (2013)).

Plaintiffs' theory that Ronaldo allegedly facilitated wrongful conduct of Binance which, in turn, caused injuries to Plaintiffs, Compl. ¶ 290, fares no better. *See Knowles v. McDonald's USA, LLC*, No. 16-81657-CIV, 2018 WL 8244277, at *3 (S.D. Fla. Feb. 9, 2018) (finding plaintiff's allegations that she "suffered an injury because McDonald's Corp.'s use of unlawful marketing and pricing methods at the corporate-owned restaurants helped its subsidiary to engage in the deceptive conduct that led to Plaintiff's injury," was "a causal link [] too conclusory and attenuated to satisfy standing.").

***Finally***, because Plaintiffs fail to establish a concrete injury fairly traceable to Ronaldo's alleged conduct, they cannot establish how a favorable decision in this case would redress their (unspecified and unpled) injuries.

## III. The Complaint Fails to State a Claim For Relief

The Court should dismiss Plaintiffs' Complaint for the additional, independent reason that Plaintiffs fail to state a claim upon which relief can be granted.

### A. Plaintiffs Fail to State A Claim Under State Securities Laws

In their Complaint, Plaintiffs allege Ronaldo violated several provisions of the Florida, California, and Colorado securities laws in Counts I, III, and V, respectively. *See* Compl. ¶¶ 352–

359, 370–383, 390–400.  Plaintiffs fail to state a claim that Ronaldo is liable under the Florida Securities and Investor Protection Act ("FSIPA"), the California Securities Law ("CSL"), and the Colorado Securities Act ("CSA") for "participating" or "materially assisting" in the sale of unregistered securities because the Complaint contains no allegations to draw a plausible inference that Ronaldo engaged in activity that induced Plaintiffs to purchase the subject products.  *See* Fla. Stat. § 517.07 (prohibiting sale of unregistered securities); *id.* § 517.211(1) (holding "director[s], officer[s], partner[s], or agent[s]" of the seller who "personally participated or aided" in the sale liable); Cal. Corp. Code § 25110 (prohibiting sale of unregistered securities); *id.* § 25504.1 (extending liability to those who "materially assist" in violations of certain sections of the CSL); Colo. Rev. Stat. § 11-51-301 (prohibiting the sale of unregistered securities).  Plaintiffs likewise fail to state a claim against Ronaldo for securities fraud under the CSL and CSA by not pleading fraud with particularity and providing no link between any purported misrepresentation by Ronaldo and the alleged purchases by Plaintiffs.  *See* Cal. Corp. Code § 25401 (prohibiting fraud in selling securities); *id.* § 25504.1 (secondary liability); Colo. Rev. Stat. § 11-51-501 (prohibiting fraud in selling securities); § 11-51-604(5)(c) (extending liability to those who give "substantial assistance" to violators of 11-51-501).  Counts I, III, and V should be dismissed.

### i.   *Plaintiffs Have Not Sufficiently Alleged that Ronaldo Has Participated or Materially Assisted in the Sale of the Alleged Unregistered Securities*

Plaintiffs' seek to hold Ronaldo secondarily liable under the FSIPA provision applying to directors, officers, partners, or agents of a seller of securities, *see* Compl. ¶ 358, but secondary liability under the FSIPA "***requires*** that the violator have ***personally participated*** in making the sale or purchase" of the unregistered security, meaning "***some activity in inducing the purchaser to invest***."  *Hines v. FiServ, Inc.*, No. 08-cv-2569, 2010 WL 1249838, at *6 (M.D. Fla. Mar. 25, 2010) (emphases added) (citation omitted) (dismissing class action FSIPA claim because the complaint did not plausibly allege that defendant had any part in inducing plaintiffs to purchase the subject investments).  Similarly, the CSL "requires a greater showing to impose joint and several liability upon aiders and abettors" in securities violations, *i.e.*, showing "material assistance in the ***actual violation***."  *AREI II Cases*, 216 Cal. App. 4th 1004, 1012, 1015–16 (2013) (emphasis added) (reversing lower court's denial of motion to dismiss CSL "aiding and abetting" securities violations claims, and holding that the complaint stated no cause of action under Section 25504.1 of the CSL because "there are no allegations that [defendant] materially assisted in the securities

20

violation itself.").  As for the CSA, Plaintiffs fail to cite in their Complaint any relevant section of the statute that would hold Ronaldo secondarily liable for a violation of Section 11-51-301, but even if they had, there are no factual allegations to support a cause of action.

Plaintiffs allege that "[t]hrough his social media promotions, NFT collections, and other advertising activities, Mr. Ronaldo personally participated in and aided Binance in making the sale of unregistered securities," Compl. ¶ 297, but Plaintiffs have not alleged that Ronaldo promoted or participated in the sale of the ***subject assets themselves***.[18]   Rather, Plaintiffs allege that Ronaldo's "promotion of the collaborative NFT collection inherently promoted" the other products on the Binance platform (*e.g.*, BNB, BUSD, SOL, etc.) because it made others "more likely to invest in Binance for ***other*** purposes."  *Id.* at ¶ 276 (emphasis added).  These allegations are insufficient to hold Ronaldo secondarily liable for the sale of allegedly unregistered securities under these various state laws because they fail to show active and direct participation in the ***actual violation*** alleged in the Complaint.  *See Groom v. Bank of Am.*, No. 08-cv-2567, 2012 WL 50250, at *5 (M.D. Fla. Jan. 9, 2012) (dismissing mass action FSIPA secondary liability claim where plaintiffs alleged defendants had "published favorable reports on [the subject company]" but failed to allege "the [defendant-banks] ***played any part in the sale of the investments*** or that they fell within any other category of persons identified in [Section 517.211].") (emphasis added); *AREI II Cases*, 216 Cal. App. 4th at 1015–16; *see also Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2019 WL 2085839, at *3 (S.D. Fla. May 13, 2019) (dismissing claims brought against athletes and celebrities alleging violation of federal securities law for solicitation of unregistered securities on social media because plaintiffs failed to establish defendants communicated with plaintiffs and "successfully solicited" them to purchase securities).[19]   Because Plaintiffs failed to allege that

---

[18]     Ronaldo could not have personally or materially assisted in the sale of the alleged unregistered securities because he is not alleged to have ever advertised, promoted, or even mentioned any of the alleged unregistered securities at issue in the Complaint.  *In re CNL Hotels & Resorts, Inc.*, No. 04-CV-1341, 2005 WL 2291729, at *4-5 (M.D. Fla. Sept. 20, 2005) ("A claim of solicitation requires allegations that the defendant directly solicited the plaintiff to purchase the securities at issue" and "that the [p]laintiffs' purchases . . . resulted from that solicitation.").

[19]     Precedent involving issues of federal securities law is persuasive to courts deciding issues under state securities laws.  If anything, state securities laws are often narrower than federal securities laws, thereby prohibiting a smaller spectrum of conduct.  *See, e.g.*, *AREI II Cases*, 216 Cal. App. 4th at 1017 (noting that "the requirement under section 25504.1 that a person materially assist in the securities violation is narrower in scope than the requirement a person substantially assist in the achievement of the violation" under federal securities law); *Rousseff v. E.F. Hutton*

Ronaldo participated in the sale of the alleged securities at issue (*i.e.*, the alleged violation), Plaintiffs' FSIPA, CSL, and CSA claims should be dismissed.

  ii. ***Plaintiffs Likewise Fail to State a Claim for Violation of California and Colorado Securities Law for Fraud in Connection with Sale of Alleged Securities***

  For similar reasons, Plaintiffs' claims of securities fraud under California and Colorado are also inadequately pled.  Beyond the fatal defect of failing to plead fraud with particularity, *see infra* § III.B, Plaintiffs' allegations are insufficient to establish secondary liability for "materially assisting" in the sale of a security through false or misleading statements, a requirement under California and Colorado law.  Plaintiffs provide the conclusory allegations that "Defendant caused a false statement or omission to be made in connection with the offer and sale of [alleged securities]," Compl. ¶¶ 380, 398, and that he "had knowledge of the falsity or misleading nature of a statement[,]" *id.* at ¶¶ 381, 399.  Setting aside the critical fact that Plaintiffs have failed to allege ***what*** those representations were, there is ***nothing*** in the Complaint that alleges that Plaintiffs read and relied on those representations.  Indeed, while Plaintiffs allege that Ronaldo "encourage[ed] his millions of followers, fans, and supporters to invest with the Binance platform[,]" *id.* at ¶ 290, ***nowhere*** is it alleged that Plaintiffs followed Ronaldo's social media accounts or read and relied on any information Ronaldo may have disclosed on his Twitter account.  As such, a claim for securities fraud in violation of these California and Colorado laws cannot stand.  *See, e.g.*, *Guo v. Robl*, No. 22-cv-05576, 2023 WL 2683473, at *7 (C.D. Cal. Mar. 2, 2023) (dismissing plaintiffs' claim that defendants violated Section 25504.1 because they did not adequately allege either "material assistance" or "intent to defraud" where all that was alleged was that defendants prepared underlying loan documents, but not that defendants knew the documents contained false or misleading statements, or that plaintiffs relied on them); *AREI II Cases*, 216 Cal. App. 4th at 1015–16, 1018–19 (concluding the allegations did not show defendant "materially assisted" where all that was alleged was that defendant prepared an offering document, but not that plaintiffs relied on that document, or were even aware of its existence); *Sears v. Am. Ent. Grp.,*

---

*Co.*, 867 F.2d 1281, 1285 (11th Cir. 1989) (noting that Rule 10b-5 under federal securities law is "wide-ranging, covering a broad spectrum of fraud," while "[t]he Florida statutes, on the other hand, are far more restrictive" as section 517.211 "applies to a far more narrow group of activities than does [R]ule 10b-5.").  Accordingly, alleged conduct found insufficient to state a claim under federal securities law is unlikely to sufficiently state a claim under state securities laws.

*Inc.*, No. 94 C 0165, 1995 WL 23112, at *5 (N.D. Ill. Jan. 19, 1995) (applying Colorado law dismissing a counterclaim for violation of CSA Section 11-51-604 for failing to allege facts that linked the purported misrepresentation to a securities transaction, and failing to establish how the misrepresentations related to the value of the security or the consideration offered for that security).

Moreover, with respect to establishing joint and several liability pursuant to Section 25504.1 of the CSL, Plaintiffs also fail to provide sufficient factual allegations to demonstrate "intent to deceive or defraud," providing only a single conclusory allegation in a footnote to the Complaint. Compl. p. 119 n.69. Such a deficiency is yet another reason dismissal of Count III was warranted. *See SIC Metals, Inc. v. Hyundai Steel Co.*, No. 18-00912, 2018 WL 6842958, at *5 (C.D. Cal. Nov. 14, 2018) (dismissing claim brought under Section 25504.1 because plaintiffs failed to allege that defendants intended to deceive or defraud plaintiffs when they contracted to purchase securities).[20]

### iii. Plaintiffs Have Not Sufficiently Alleged that Ronaldo Can Be Liable Under the FSIPA

Plaintiffs have not plausibly alleged that Ronaldo falls into any of the categories of persons that can be held liable under Section 517.211 of the FSIPA. Indeed, beyond the conclusory allegation that Ronaldo is a "director, officer, partner, and/or agent" of Binance, Compl. ¶ 358, Plaintiffs allege only the existence of a purported "partnership" between Ronaldo and Binance, *see, e.g.*, *id.* at ¶¶ 269–270. Plaintiffs' allegations as to the "partnership," however, do not fit the common law definition of "partner." *See Arthur Young & Co. v. Mariner Corp.*, 630 So. 2d 1199, 1204 (Fla. 4th DCA 1994) (concluding that the use of the word "agent" in Section 517.211 "means to incorporate the common law definition of agency."). According to Black's Law Dictionary, a "partner" is "someone who shares or takes part with another, [especially] in a venture with shared

---

[20] Plaintiffs also allege that Ronaldo is in violation of Section 25210(b) of the CSL, which prohibits someone from inducing the sale of a security for a broker-dealer who has not obtained certification to engage in securities transactions. Cal. Corp. Code § 25210(b). To support this alleged statutory violation, Plaintiffs provide a single conclusory allegation that Ronaldo "encourag[ed]" Binance to offer the purported unregistered securities. Compl. ¶ 377. Plaintiffs fail to state a claim for violation of this provision of the CSL. *Konopasek v. Ten Assocs., LLC.*, No. 18-00272, 2018 WL 6177249, at *5 (C.D. Cal. Oct. 22, 2018) (dismissing the claims brought under California securities laws, including the asserted violation under Section 25210(b) for failing to allege facts indicating that defendants "acted as investment advisers or broker-dealers," that they "ha[d] advised others on the purchase or sale of securities," and that "they engaged in any security transactions as broker-dealers.").

benefits and shared risks," or "one of two persons who jointly carry on a business for profit." PARTNER, Black's Law Dictionary (11th ed. 2019); *see Shoreline Found., Inc. v. Brisk*, 278 So. 3d 68, 76 (Fla. 4th DCA 2019) (relying on Black's Law Dictionary, among other sources, to ascertain the meaning of "unjust" in Section 517.211(6) of the Florida Statutes). Plaintiffs do not allege anywhere in the Complaint that Ronaldo was involved in the business affairs of Binance or that the two had entered into a joint venture. As such, the allegations do not plausibly support the inference that Ronaldo was a "partner" of Binance within the meaning of Section 517.211 of the FSIPA. Further, to the extent Plaintiffs seek to impose secondary liability on Ronaldo as an alleged "promoter" of Binance, *see, e.g.*, Compl. ¶¶ 10, 13, such an imposition has no basis in the FSIPA because the FSIPA does not impose secondary liability over "promoters." *See* Fla. Stat. § 517.211(1).

## B.      Plaintiffs' Fraud-Based Claims Fail to Meet Rule 9(b)'s Heightened Pleading Requirement

A party alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with this heightened pleading requirement, Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting fraud must be specific enough to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks and citations omitted). "A sufficient level of factual support for a [securities] claim may be found where the circumstances of the fraud are pled in detail. This means the who, what, when where, and how: the first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (internal quotation marks and citations omitted). For claims of violation of securities statutes, the Eleventh Circuit has held that Rule 9(b) requires that a plaintiff set forth "(1) precisely what statements were made . . . or what omissions were made, and (2) the time and place of each such statement and the person responsible for making" or "not making [it]" (3) "the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba*, 256 F.3d at 1202.

Plaintiffs' Complaint falls woefully short of the Rule 9(b) standard. While Plaintiffs identify statements made in Ronaldo's Tweets about the Ronaldo NFTs, ***Plaintiffs do not allege when*** or ***where*** they saw Ronaldo's statements, ***what*** was false or misleading about those

statements or ***how*** Plaintiffs were misled by those statements.  *See generally*, Compl.  This failure alone warrants dismissal.  *See Lacy v. BP P.L.C.*, 723 F. App'x 713, 716 (11th Cir. 2018) (affirming dismissal for failure to satisfy Rule 9(b) where the complaint failed to allege "whether or how [plaintiff] was misled" by defendant's statements); *see also Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 474 (11th Cir. 2016) (affirming dismissal for failure to satisfy Rule 9(b) where plaintiff failed "to identify with precision what the misrepresentation actually was").

At best, Plaintiffs contend that Ronaldo's Tweets about the Ronaldo NFTs "inherently promoted" alleged unregistered securities offered or sold by Binance because users "were more likely to invest in Binance for other purposes" once those users signed up for Binance accounts to access the Ronaldo NFTs.  Compl. ¶ 276.  But not only is such an allegation, in and of itself, entirely conclusory, it also is unsupported by any particularized factual allegations in the Complaint that would satisfy Rule 9(b).  *See Jones v. Gen. Motors, LLC*, No. 23-11102, 2024 WL 861064, at *3 (11th Cir. Feb. 29, 2024) ("unadorned legal conclusions will not suffice because [plaintiff] has failed to allege the who, what, when, where, and how that we require to satisfy fraud pleading under Rule 9(b).") (internal quotation marks and citations omitted).  Indeed, Plaintiffs do not identify how the alleged statements made by Ronaldo about the Ronaldo NFTs misled unidentified people such that they became more susceptible to purchase other products that Ronaldo never mentioned in his Tweets or elsewhere.  Nor do Plaintiffs allege anything that was misleading about Ronaldo's Tweets.  For these reasons, as well as those stated *supra* § III.A and *infra* § III.E, Plaintiffs' CSL, CSA and CCPA claims (Counts III, V, and VI) should be dismissed. *See Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1251–52 (N.D. Cal. 2014) (dismissing CSL claim under Rule 9(b) because the plaintiff "ha[d] not sufficiently pled facts to demonstrate that [defendants' statements] were false," nor had he established "how the material misrepresentation[s] . . . *caused him* to purchase the security") (emphasis in original); *Est. of Bogue v. Adams*, 405 F. Supp. 3d 929, 939–40 (D. Colo. 2019) (dismissing CSA claims for failure to satisfy Rule 9(b) where the allegations failed to identify "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof") (internal quotation marks and citation omitted); *Krum v. Chubb Ltd.*, No. 20-CV-03616, 2022 WL 1558882, at *5 (D. Colo. Jan. 14, 2022) (dismissing CCPA claim, in part, for failure to plead with sufficient particularity, and holding "[a] claim that a party violated the CCPA must be pled with particularity.").

**C.**     **Plaintiffs Fail to State A Claim Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**

Plaintiffs' FDUTPA claim fails out of the gate because it is premised on the alleged purchase of securities.[21] *Feng v. Walsh*, No. 19-24138-CIV, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) (dismissing FDUTPA claims because "FDUTPA does not apply to securities claims" where "[p]laintiffs' allegations regarding their lost investments are rooted in securities transactions[.]"); *Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1295 (S.D. Fla. 2000) (same).

Even with this fundamental defect aside, Count II of the Complaint still fails because Plaintiffs do not plead the necessary elements of a FDUTPA claim.  A consumer bringing a claim under FDUTPA, Fla. Stat. § 501.204 (2023), is required to establish three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Washington v. LaSalle Bank Nat'l Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) (citation omitted).  Under FDUTPA, a deceptive act "occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (internal quotation marks and citation omitted).

Here, Plaintiffs' fail to plead a requisite deceptive act under FDUTPA.  While Plaintiffs identify Ronaldo's Tweets about the Ronaldo NFTs, they do not identify which, if any, of Ronaldo's statements were "likely to mislead the consumer . . . to the consumer's detriment" beyond conclusory and unfounded allegations.  Compl. ¶ 384.  Conclusory allegations, however, are insufficient. *See Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861, 2005 WL 975773, at *9 (S.D. Fla. Mar. 4, 2005) (finding that FDUTPA counterclaim was stated in a conclusory fashion where counterclaimant merely alleged that plaintiff "wrongfully, unreasonably and unjustly" acted for a "deceptive and improper purpose," explaining that a FDUTPA claimant "must do more than merely recite conclusory allegations; they must allege facts which properly raise recognizable FDUTPA claims.").

Plaintiffs also fail to establish the second and third elements of a FDUTPA claim:

---

[21]     In the allegations referenced in Count II of the Complaint, Plaintiffs make clear that the gravamen of their Complaint is the "flagrant sale and promotion of unregistered securities in violation of the securities laws."  Compl. ¶ 23; *see also, e.g.*, Compl. ¶¶ 10–11, 13, 24–25, 218, 270, 276, 290–91, 297.

causation and actual damages.  Plaintiffs' do not allege that any "deceptive act" of Ronaldo caused them any harm.  *See Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (dismissing FDUTPA claim, in part, for failure to plead the causation element because the plaintiff "did not allege that, but for the quoted statement on Aurora's and Nationstar's website [the complained-of conduct], she would have applied for (or would have received) a loan modification"); *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) ("FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.") (internal quotation marks and citation omitted); *see also supra* § II (discussing lack of causation and injury).  Accordingly, Count II of the Complaint should be dismissed.

### D.    Plaintiffs Fail to State A Claim for Violations of California's Unfair Competition Law, Business & Professions Code (UCL) § 17200, *et seq.*

Plaintiffs fail to state a claim for violations of California's UCL, which prohibits "unfair, deceptive, untrue or misleading advertising," for multiple reasons.  Cal. Bus. & Prof. Code § 17200.  ***First***, despite seeking restitution (an equitable remedy), Plaintiffs do not allege that they have no adequate remedy at law, a requirement for a UCL claim.  *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) (rejecting plaintiff's UCL claim seeking restitution where plaintiff also sought damages for the same alleged injury, holding, "[a] plaintiff may ***only*** seek equitable relief under California's UCL where she has ***no adequate remedy at law***.") (emphasis added).  Nowhere in their Complaint do Plaintiffs allege that they have no adequate remedy at law. Just the opposite.  Other than their conversion claim, every one of Plaintiffs' other counts in the Complaint seek damages for the exact same injury pled in their UCL count.  *See* Compl. ¶ 359 (Count I, " Plaintiffs and members of the Classes sustained damages"); ¶ 368 (Count II, "Plaintiffs and consumers in the Classes make claims for actual damages"); ¶ 382 (Count III, seeking "rescissionary damages under Section 25504.1."); ¶ 400 (Count V, seeking "rescissionary damages under Section 11-51-604(5)(c)."); ¶ 408 (Count VI, "Plaintiff and consumers in the Class make claims for actual damages"); ¶ 414 (Count VII, "Binance's conspiracy with Defendant caused damages to Plaintiffs and Class members in the amount of their lost investments."); ¶ 425 (Count IX, "Defendant Ronaldo's actions . . . are a proximate cause of actual damages to Plaintiffs and Class members.").  Thus Plaintiffs' own allegations establish that Plaintiffs do not lack an adequate remedy at law.  This is the case even if "all of plaintiff's non-UCL claims ultimately fail." *Moss*,

197 F. Supp. 3d at 1203 (dismissing UCL claim where plaintiff had an adequate remedy at law).

*Second*, Plaintiffs do not allege an underlying statutory violation upon which their UCL claim is based.  To state a cause of action under UCL, Plaintiffs' claim "must be based on some predicate act involving a violation of some other statute." *Bagby v. Gamboa Services, Inc.*, No. 23-01201, 2023 WL 9005637, at *5 (C.D. Cal. Nov. 14, 2023) (internal quotation marks and citation omitted).  Nowhere in their Complaint do Plaintiffs identify the underlying statutory violation upon which they base their UCL claim.  Without allegations of a predicate violation, Plaintiffs' claim for violations of the UCL should be dismissed.  *See Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231, 1240–41 (S.D. Fla. 2011) (dismissing claim under UCL where plaintiffs did not allege a proper predicate claim).

*Third*, Plaintiffs have not alleged they "suffered injury in fact and lost money or property as a result of the unfair competition[,]" a requirement to state a UCL claim.  *Kenery v. Wells Fargo*, *N.A.*, No. 13-CV-02411, 2015 WL 427659, at *3 (N.D. Cal. Jan. 30, 2015) (quoting Cal. Bus. & Prof. Code § 17204) (dismissing UCL claims where plaintiff did not allege facts showing how she lost money or property) (emphasis omitted); *Zarrella v. Pac. Life Ins. Co.*, 820 F. Supp. 2d 1371, 1378 (S.D. Fla. 2011).  While Plaintiffs conclusorily state that they have been "substantial[ly] injur[ed,]" Compl. ¶ 388, they do not allege that any of Ronaldo's statements actually caused Plaintiffs to *lose money or property*.  Compl. ¶¶ 384-389.  For these reasons, Plaintiffs' UCL claim should be dismissed.

### E. Plaintiffs Fail to State A Claim Under the Colorado Consumer Protection Act ("CCPA")

#### i. *Plaintiffs' CCPA Claims Are Preempted By The CSA*

A claim for unfair or deceptive trade practices under the CCPA contains five elements:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003) (en banc) (citation omitted).  Where a claim under the CCPA arises from securities investments, such a claim is "governed by the Colorado Securities Act (the "CSA")."  *Robinson v. OppenheimerFunds, Inc.*, No. 12-CV-1528, 2013 WL 754417, at *4 (D. Colo. Feb. 27, 2013)

(citation omitted) (dismissing plaintiffs' CCPA claim and finding the CSA governs plaintiffs' allegation regarding misleading statements in a securities fund prospectus). When "two statutory schemes attempt to regulate the same conduct, the more specific statute preempts the general statute[,]" and representations made in the securities context "clearly fall[ ] most specifically under the purview of the Colorado Securities Act." *Id.* (citation omitted).

Like Plaintiffs' FDUTPA claim, their CCPA claim is grounded in the allegation that Ronaldo's "promotions solicited or assisted Binance in soliciting investments in unregistered securities[.]" Compl. ¶ 290; *see also id.* ¶¶ 10–11, 13, 23–25, 218, 270, 276, 291, 297. Where the claims at issue arise from allegations of "misrepresentations as to the nature or risk of the . . . investment[,]" the CSA preempts the CCPA. *Robinson*, 2013 WL 754417, at *4. For this reason alone, Plaintiffs' CCPA claim should be dismissed as preempted by the CSA.

### ii. *Plaintiffs Fail to Sufficiently Allege the Required Elements of a CCPA Claim*

Plaintiffs' CCPA claim should also be dismissed because they fail to plead the necessary elements. To be a deceptive trade practice under the CCPA, "a false or misleading statement" must be made "with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive the plaintiff." *Rhino Linings*, 62 P.3d at 147 (internal quotation marks and citation omitted). CCPA claims also require that a plaintiff "demonstrate a 'causal link' between the 'deceptive trade practices and the injury." *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1114 (D. Colo 2018), *aff'd*, 814 F. App'x 408 (10th Cir. 2020). "If one element of a CCPA claim is not met, the entire claim fails." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1142 (D. Colo. 2013) (citation omitted). Notably, the CCPA asks even more from Plaintiffs than FDUTPA: to plead a CCPA claim, Plaintiffs must allege that Ronaldo *knowingly* made a false representation, which they fail to do. *Rhino Linings*, 62 P.3d at 147.

Plaintiffs' CCPA claim fails for at least four reasons. *First*, for the reasons discussed *supra* pp. 26–27, Plaintiffs do not allege any false statements by Ronaldo. *See, e.g., Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1304 (10th Cir. 2002) (holding "[p]laintiffs fail to plausibly allege the claims are falsifiable" when "[defendant] made vague and unprovable claims").

*Second*, even if Ronaldo's alleged statements were false (they are not), Plaintiffs fail to adequately allege that Ronaldo *knowingly* made a false representation. Plaintiffs assert that Ronaldo "knew or should have known of potential concerns about Binance selling unregistered crypto securities" solely because of his "investment experience and vast resources to obtain outside

advisors[.]"  Compl. ¶ 297.  But Plaintiffs fail to plead a factual basis to support this conclusory allegation.  *Compare*, Compl. ¶ 297 (abstractly alleging only Ronaldo's general "resources" and "experience") *with O'Connor v. BMW of N. Am., LLC*, No. 18-CV-03190, 2020 WL 2309617, at *13 (D. Colo. Jan. 7, 2020) (finding highly detailed allegations "BMW [defendant] had exclusive knowledge or access to material facts about N63 vehicles and engines" and that "BMW acquired its knowledge of the oil consumption defect in 2008, if not before, through sources not available to Plaintiffs, including from pre-release testing data, early consumer complaints, and aggregate data from BMW dealers, including dealer repair orders and high warranty rates" sufficient to state a claim under the CCPA); *see also Roland v. Letgo, Inc.*, 644 F. Supp. 3d 907, 919 (D. Colo. 2022) ("[i]t is clear from the record that there is no factual basis for alleging that [defendant] *knew* anything in the [verified user's] ad was a lie, or that it acted recklessly or willfully, intending to induce the" transaction) (emphasis in original); *Twombly*, 550 U.S. at 555 ("on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation") (citation omitted).

 **Third**, Plaintiffs do not allege that Ronaldo knowingly made a false statement "with an intent to mislead and deceive" Plaintiffs.  *Rhino Linings*, 62 P.3d at 147.

 **Fourth**, Plaintiffs fail to allege causation between any alleged misrepresentations by Ronaldo and any alleged damages Plaintiffs suffered.  *See supra* § II; *see also Peterson*, 353 F. Supp. 3d at 1114 ("If a plaintiff cannot show a causal link between a defendant's deceptive trade practices and the plaintiff's injury, the plaintiff cannot recover damages under the CCPA.").

 Accordingly, Count VI of the Complaint should be dismissed for failure to state a claim.

### F. Plaintiffs Fail to State A Claim for Civil Conspiracy

 Plaintiffs also fail to state a claim for civil conspiracy because they do not allege an underlying unlawful act or tort as the basis of the civil conspiracy.  There is no "independent cause of action for civil conspiracy" and civil conspiracy claims must "allege an underlying illegal act or tort on which the conspiracy is based."  *Merch. One, Inc. v. TLO, Inc.*, No. 19-CV-23719, 2020 WL 248608, at *8 (S.D. Fla. Jan. 16, 2020) (dismissing civil conspiracy claim where plaintiff did not allege a sufficient actionable underlying tort or wrong).  Plaintiffs do not identify a tort upon which their conspiracy claim is based, only that Ronaldo allegedly "engaged in unlawful acts[.]" Compl.  ¶ 412.  Vague allegations of "unlawful acts" are insufficient to state a claim for civil conspiracy.  *See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2011 WL

4434891, at *6 (S.D. Fla. Sept. 23, 2011) (dismissing civil conspiracy claim, finding "[p]laintiffs' conclusory allegations with regard to the [d]efendants' actions are not sufficient. The Court specifically notes that Plaintiffs vaguely refer to 'false guarantees' without identifying the substance of these guarantees.").

Even if Plaintiffs sufficiently pled an underlying wrongful act, their civil conspiracy claim still fails because they do not allege any of the required elements. To state a claim for civil conspiracy, a plaintiff must allege "(1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (internal quotation marks and citation omitted). Beyond vague and conclusory allegations—which should be ignored—Plaintiffs have pled ***none*** of these elements. *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) ("A district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.") (internal quotation marks and citation omitted).

For example, Plaintiffs do not allege sufficient facts to show that Ronaldo and Binance "reached an understanding to commit the actionable wrongs" beyond merely stating that "Binance entered into one or more agreements with the other Defendant[.]"[22] *See* Compl. ¶ 411; *Wardak v. Goolden*, No. 19-CV-21121, 2020 WL 9718811, at *7 (S.D. Fla. May 22, 2020) (dismissing civil conspiracy claim where there were no factual allegations the parties had an understanding to commit the alleged wrongful conduct). Plaintiffs' conclusory statement that "Binance's conspiracy with Defendant caused damages", Compl. ¶ 414, falls short of the type of "clear, positive, and specific allegations" required to satisfy the damages element of a claim for civil conspiracy. *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1190 (S.D. Fla. 2012), *aff'd*, 568 F. App'x 690 (11th Cir. 2014) (dismissing civil conspiracy claim and explaining that "general allegations of conspiracy are inadequate").

What's more, Plaintiffs fail to provide any facts showing that Ronaldo actually knew of the alleged unlawful scheme which is grounds for dismissal. Simply stating that Ronaldo "engaged

---

[22]    Curiously, Ronaldo is the ***only*** Defendant in this case. Plaintiffs' allegation as to "the other Defendant" is likely an error caused by Plaintiffs' shotty copy-and-paste work from its Complaint in *Zhao*, No. 23-CV-21261 (S.D. Fla.) (Altman, J.).

in unlawful acts," "assisted wrongdoing by Binance," "knew that these actions would result in injury," and "caused damages" are too conclusory to allege each factor of a civil conspiracy claim. *See* Compl. ¶¶ 412-14; *Honig*, 339 F. Supp. 3d at 1346–47 (dismissing civil conspiracy claim, explaining "[t]here are no factual allegations from which this Court could plausibly infer that any defendant knew of the unlawful scheme, and [p]laintiffs' allegations that the [d]efendants 'reached and entered into an express or tacit agreement with at least one or more of the other co-conspirators,' 'agreed to join in and participate in the Woodbridge civil conspiracy,' and 'knew or should have known that the solicitation, recommendation, and sale of the Woodbridge securities was improper and unlawful' are conclusory."). Plaintiffs' civil conspiracy claim (Count VII) should be dismissed.

### G.     Plaintiffs Fail to State A Claim for Conversion

To state a claim for conversion, Plaintiffs "must establish possession or an immediate right to possession of the converted property at the time of conversion." *Rana Fin., LLC v. City Nat'l Bank of N.J.*, 347 F. Supp. 3d 1147, 1153 (S.D. Fla. 2018) (internal quotation marks and citation omitted). As pled, Plaintiffs allege only that Binance and its founder—***not Ronaldo***—took possession of Plaintiffs' crypto-assets for unauthorized purposes. *See* Compl. ¶ 417. Indeed, Plaintiffs' Complaint is replete with concessions that Binance is controlled by founder Changpeng Zhao and that Plaintiffs' digital assets are under Zhao's dominion, not Ronaldo's. *Id.* ¶¶ 42–43, 65, 71, 73 (stating Binance is controlled by Zhao), *id.* at ¶¶ 45, 75, 79, 135 (stating Binance, under Zhao's direction, maintains and controls users' crypto assets on Binance's platform). There are no such allegations as to Ronaldo. In fact, the Complaint does not contain a single allegation that Ronaldo took possession of Plaintiffs' property (let alone that he did so without permission). Because the Complaint is bereft of any allegations that Ronaldo asserted dominion over Plaintiffs' digital assets, Plaintiffs' conversion claim (Count VIII) should be dismissed. *See Rana Fin., LLC*, 347 F. Supp. 3d at 1154 (dismissing conversion claim where "[p]laintiff does not allege that [d]efendants took possession of its property without permission."); *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) ("[I]n order to state a claim of conversion, one must allege facts sufficient to show . . . that the other party wrongfully asserted dominion over th[e] property.").

### H.     Plaintiffs Fail to State A Claim for Aiding and Abetting Conversion

Plaintiffs' claim for aiding and abetting conversion should also be dismissed because

Plaintiffs fail to allege all of the necessary elements.  To state a claim for aiding and abetting, Plaintiffs must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) actual knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing." *Feng*, 2021 WL 8055449, at *7 (citation omitted).  Plaintiffs' claim fails for multiple reasons.

      ***First***, Plaintiffs fail to allege that Ronaldo had actual knowledge of the alleged conversion. Plaintiffs must show that Ronaldo "***actually knew*** of the underlying wrongs committed"— allegations of mere "red flags" showing that Ronaldo "should have known," Compl. ¶ 297, are not enough to establish the element of ***actual*** knowledge necessary for an aiding and abetting claim. *Feng*, 2021 WL 8055449, at *7; *Abel & Buchheim, P.R., Inc. v. Citibank, Nat'l Ass'n*, No. 16-CV-24663, 2017 WL 3731002, at *2 (S.D. Fla. Aug. 28, 2017) (dismissing aiding and abetting conversion claim where evidence showing that the plaintiff "should have known" about the wrongdoing was insufficient).  Plaintiffs' allegations that Ronaldo "should have known" he was allegedly "aiding and abetting Binance's fraud and/or conversion" based on his "investment experience and vast resources[,]" Compl. ¶ 297, are (in addition to being conclusory and unsupported) insufficient because Plaintiffs have not provided any facts to show that any such alleged "experience" or "resources" provided Ronaldo with actual knowledge of Binance's alleged conversion.  *Rusty115 Corp. v. Bank of Am., N.A.*, No. 22-CV-22541, 2023 WL 6064518, at *6 (S.D. Fla. Sept. 18, 2023) (dismissing claims of aiding and abetting and holding that statements that suggest a defendant "should have known that something was amiss" are insufficient to support an aiding and abetting claim).

      Plaintiffs' allegation that Ronaldo somehow "acquired knowledge" of the alleged conversion fares no better.  Compl. ¶ 423.  Without providing any specific facts as to how Ronaldo "acquired knowledge" of the alleged conversion, Plaintiffs' Complaint does not "give rise to a strong inference of actual knowledge regarding the underlying wrongdoing."  *Feng*, 2021 WL 8055449, at *8 (dismissing aiding and abetting conversion claim where allegations that defendants "knew or should have known" were not enough to show actual knowledge of the underlying wrongdoing) (citation omitted).  Put simply, Plaintiffs' "blanket allegation[s]" about Ronaldo's knowledge are not enough to establish the element of actual knowledge.  *Abel & Buchheim, P.R., Inc.*, 2017 WL 3731002, at *3 (dismissing aiding and abetting conversion claim where plaintiff made blanket allegations of the defendant's knowledge of wrongdoing).

***Second***, Plaintiffs fail to allege Ronaldo substantially assisted in the alleged conversion. To properly allege an aiding and abetting conversion claim, Plaintiffs must show that Ronaldo "affirmatively assist[ed], help[ed] conceal or fail[ed] to act." *Rusty115 Corp.*, 2023 WL 6064518, at *6 (dismissing aiding and abetting claims). Plaintiffs do not (and cannot) come close to satisfying this requirement. Rather, Plaintiffs summarily state that "Defendant Ronaldo substantially aided, abetted, and/or participated" in the alleged conversion. Compl. ¶ 424. These bare allegations of assistance, without more, do not show ***how*** Ronaldo actually contributed to the alleged conversion and therefore are insufficient to state a claim for aiding and abetting. *See Twombly*, 550 U.S. at 555 ("labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do"); *Feng*, 2021 WL 8055449, at *8 (dismissing aiding and abetting conversion claim where plaintiffs conclusorily alleged that defendants provided substantial assistance to advance the conversion). Plaintiffs' claim for aiding and abetting conversion (Count IX) should be dismissed.

## IV.    The FAA Mandates Arbitration of Plaintiffs' Claims

Should the Court find that none of the foregoing grounds warrant dismissal, the Court should, in the alternative, compel arbitration of Plaintiffs' claims.

The Federal Arbitration Act ("FAA") establishes that a "contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable," 9 U.S.C. § 2. In enacting the FAA, Congress affirmed the "liberal federal policy favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (citation omitted). Keeping with this liberal policy, the U.S. Supreme Court has mandated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). "Where the parties have agreed to arbitrate their dispute, the job of the courts — indeed, the obligation — is to enforce that agreement." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018). Thus, a party opposing arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph,* 531 U.S. 79, 91 (2000).

As a contract involving interstate commerce,[23] the Terms of Use's arbitration provision is

---

[23]    Plaintiffs, citizens of California, Colorado, and Florida, allege that they "purchased, repurchased, invested, and/or reinvested" alleged securities "offered or sold by Binance." Compl.

governed by the FAA.  *See* 9 U.S.C. § 2.  In reviewing a motion to compel arbitration, courts interpreting the FAA[24] consider three factors: (1) whether a valid arbitration agreement exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived.  *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009).  In analyzing these three factors, courts "are not limited to the way [a plaintiff] 'couches its allegations in various terms and theories of action," but instead "look to the 'true thrust' of the complaint."  *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1312 (11th Cir. 2014) (citations omitted).  Indeed, the court may "ignore the legal labels that [a plaintiff] assigns to the allegations."  *Id.* at 1311.  Here, based on the "true thrust" of the Complaint, all three factors require arbitration.[25]

## A.    A Valid Arbitration Agreement Exists

In determining whether a valid arbitration agreement exists, "courts apply the contract law of the particular state that governs the formation of contracts."  *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016).  Here, the laws of California, Colorado, and Florida all require mutual manifestation of assent to form a contract.  *See* Cal. Civ. Code §§ 1500, 1565;

---

Paragraph preceding the "Introduction", *id.* ¶¶ 36–38.  The arbitration provision is, therefore, a "contract evidencing a transaction involving commerce."  *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 274-75 (1995) (holding that the FAA governs any agreement to arbitrate if some economic activity of at least one of the parties has a nexus to interstate commerce).

[24]      The Terms of Use's choice of law provision states that all terms "shall be construed in accordance with and governed for all purposes by the laws and public policy of the State of California applicable to contracts executed and to be wholly performed within such state." Blodgett Decl. at Ex. 1, p. 35.  While California law governs the substantive law of the Terms of Use (and, thus, the arbitration provision), threshold issues of arbitrability and enforceability are governed by federal law.  *See Canobinoti, LLC v. Woods*, No. 20-CV-25081, 2022 WL 17418528, at *4 (S.D. Fla. July 26, 2022), *adopted*, 2022 WL 17419042 (S.D. Fla. Dec. 5, 2022); *Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC*, No. 06-22347, 2007 WL 601992, at *6 (S.D. Fla. Feb. 21, 2007).

[25]      The third factor, whether there has been waiver, cannot be reasonably contested.  Ronaldo has not waived his right to arbitrate.   "[W]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate."  *Ivax Corp. v. B. Braun of Am., Inc.,* 286 F.3d 1309, 1316 (11th Cir. 2002) (quoting *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg),* 62 F.3d 1356, 1366 (11th Cir. 1995)). With his first appearance being a challenge to the Court's jurisdiction, among other threshold dispositive issues, Ronaldo cannot be said to have substantially participated in this litigation.  *See AMS Staff Leasing, Inc. v. Ocha Eng'g Corp.*, 139 So. 3d 452, 454 (Fla. 3d DCA 2014) (under Florida law, "filing a motion to dismiss based on the merits of the claim," including a motion to dismiss for lack of subject matter jurisdiction, "in and of itself, does not rise to the level of active participation in a lawsuit sufficient to waive the right to compel arbitration.").

*Hickerson v. Pool Corp.*, No. 19-CV-02229, 2020 WL 5016938, at *5 (D. Colo. Aug. 25, 2020) ("Under Colorado law, a valid contract, including an arbitration agreement, "requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.") (citation omitted); *Massage Envy Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. 5th DCA 2022) ("In … Florida, a contract cannot be formed without the parties' mutual assent to the essential terms of the agreement.").

Each Plaintiff manifestly assented to the terms of the arbitration agreement.  As Plaintiffs have declared under penalty of perjury, they each created accounts on Binance's website, requiring that they agree to the Terms of Use.[26]  As such, Plaintiffs each agreed to Binance's Terms of Use, which contain an agreement to arbitrate "any dispute or controversy arising out of or relating to" Binance's services "through binding arbitration on an individual basis . . . ."  Blodgett Decl. ¶ 11. "In Florida and the federal circuits . . . click-wrap agreements [requiring that a user click a box acknowledging that he read the terms and conditions prior to creating his account] are valid and enforceable contracts." *Salco Distribs., LLC v. iCode, Inc.*, No. 05 CV 642, 2006 WL 449156, at *3 (M.D. Fla. Feb. 22, 2006); *see also Massage Envy Franchising, LLC*, 339 So. 3d at 485 ("[B]ecause the TOU immediately followed the "My Consent" forms, was attached via hyperlink, and [plaintiff] was directed to give her assent to the TOU by checking the "I agree" box, we conclude that [plaintiff] was put on sufficient notice of its terms and conditions, including the binding arbitration condition, and that she manifested her assent to those terms and conditions by affirmatively clicking the box where indicated, thus creating a valid agreement.").  Plaintiffs, thus, cannot dispute that they entered into the valid arbitration agreement contained in the Terms of Use.[27]

That Ronaldo is not a signatory to the Terms of Use does not somehow invalidate the arbitration provision.  Courts in the Eleventh Circuit have consistently recognized that "a non-signatory defendant may enforce an arbitration clause against a signatory plaintiff . . . when the signatory alleges 'interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 264 (11th

---

[26]     *See supra* n.4.

[27]     Binance, the other signatory to the arbitration agreement, has not waived its right to compel arbitration.  Indeed, Binance and other related entities have similarly asked the Court to compel the Plaintiffs to arbitration.  *See, Zhao*, No. 23-CV-21261 (S.D. Fla.) (Altman, J.) (D.E. 132).

Cir. 2015); *accord Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1292 (S.D. Fla. 2016).  Here, the Complaint is replete with allegations (albeit conclusory allegations) of concerted conduct between Ronaldo and Binance, a signatory to the arbitration provision.  *See, e.g.*, Compl. ¶¶ 10, 24, 218, 269–270, 272–297, 410–14 (alleging a "conspiracy" between Binance and Ronaldo).[28]  For example, each of Plaintiffs' causes of action asserted exclusively against Ronaldo **necessarily rely** on the conduct of Binance.  *See, e.g., id.*, ¶ 357 (Count I, "Binance's sale and offer to sell the unregistered securities is a violation of Fla. Stat. § 517.07), ¶ 373 (Count III, "**Binance offered and sold** these securities even though the securities were not properly registered or qualified for offer or sale" in violation of California Corporations Code), ¶ 395 (Count V, "**Binance sold and offered** to sell the unregistered securities to Plaintiff and Class members . . . [such sale] is a violation of the Colorado Securities Act."), ¶ 417 (Count VIII, "**Binance substantially interfered** with Plaintiffs' and Class members' funds and/or assets by knowingly and/or intentionally taking possession of this property to use for purposes not authorized"), ¶ 422 (Count IX, "**Binance wrongfully interfered** with Plaintiffs' possessory interest in a specific, identifiable sum of money."); *see also* Compl. ¶ 297 ("Mr. Ronaldo personally participated in and **aided Binance** in making the sale of unregistered securities.") (emphases added).  In fact, Plaintiffs themselves allege that they are using the instant litigation against **Ronaldo** "to hold **Binance** . . . accountable for their flagrant sale and promotion of unregistered securities . . . ."  *Id*. ¶ 23 (emphasis added).  Thus, Plaintiffs' Complaint inextricably intertwines its allegations as to Binance's conduct with those as to Ronaldo's, and Ronaldo should be permitted to enforce the arbitration agreement.  *See Sea Bowld Marine Grp., LDC v. Oceanfast Pty, Ltd.*, 432 F. Supp. 2d 1305, 1315 (S.D. Fla. 2006) (permitting non-signatory to enforce arbitration provision where "[plaintiff's] allegations in the Amended Complaint blend wrongdoing by Oceanfast, the signatory, with misconduct by the three non-signatory [d]efendants.").[29]

---

[28]     Indeed, of their 425-paragraph Complaint, Plaintiffs assert nearly every single allegation against either Binance alone (as defined in footnote one of the Complaint), or against Ronaldo and Binance jointly, despite not naming Binance as a defendant in this case.  Even a cursory review of the Table of Contents of the Complaint reveals that the Complaint's primary (and nearly exclusive) focus is on **Binance**—not Ronaldo.  *See generally*, Compl.

[29]     *See also, Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard B.V.*, No. 19-62878, 2020 WL 5627263, at *5 (S.D. Fla. June 8, 2020) (permitting non-signatory to enforce arbitration agreement where "[s]everal of [p]plaintiff's allegations point to the concerted action of [the signatory and non-signatory]."); *Valdez v. Bags, Inc.*, No. 16-20390, 2016 WL 10932513, at

### B.     Arbitrable Issues Exist

A motion to compel arbitration should not be denied unless it can be said "with positive assurance" that the arbitration clause cannot be interpreted to cover the dispute.  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  Under the FAA, "any doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (emphasis added).  "If the plaintiffs' allegations 'touch matters' covered by the arbitration agreement, then those claims must be arbitrated . . . ."  *In re Managed Care Litig.*, 132 F. Supp. 2d 989, 993 (S.D. Fla. 2000) (citation omitted).  Here, all of Plaintiffs' claims fall within the broad scope of, and "touch on," the Terms of Use's arbitration provision.

The Terms of Use's arbitration provision covers "any dispute or controversy arising out of or relating to" Binance's services "through binding arbitration on an individual basis . . . ." Blodgett Decl. ¶ 11.  Binance's services, in turn, include "*the Platform* . . . which provides Digital Asset . . . trading services", the content on Binance's platforms, and any other service Binance "may make available, directly or indirectly, from time-to-time."  Blodgett Decl. ¶ 7.  This broad language squarely encompasses Plaintiffs' claims seeking damages relating to "Defendant's misrepresentations and omissions regarding *the Binance platforms*[.]"  Compl. ¶¶ 36–38 (emphasis added); *see Moses H. Cone Mem'l Hosp.*, 460 U.S. at 5 (holding that an arbitration provision covering claims and controversies "arising out of or relating to" an agreement is a "broad arbitration clause.").  Indeed, the gist of Plaintiffs' Complaint is their displeasure with the purchases, investments, or trades they made using crypto-asset trading platforms, including Binance's platforms, lodging dozens (if not hundreds) of allegations at Binance and Binance's platforms.  *See, e.g.*, *id.* ¶¶ 97–99 ("Binance.com and Binance.US have violated federal and state securities laws by illegally conducting unregistered offers and sales of securities to U.S. investors."), ¶ 336 (seeking to define a "Global Class" of plaintiffs as those who (i) "purchased, held, and/or sold" certain "cryptocurrency tokens" "*on any platform*", (ii) "purchased, held, and/or

---

*6 (S.D. Fla. June 30, 2016) (non-signatory permitted to enforce arbitration provision because "the sweeping nature of the complaint" "paint[ed] the liability allegations with a broad brush against" both non-signatories and signatories); *Aliani v. Yum Berry, LLC*, No. 19-61549, 2019 WL 13262724, at *1 (S.D. Fla. Dec. 19, 2019) (permitting non-signatories to an arbitration agreement to enforce the agreement where the plaintiff's complaint was "replete" with allegations of "interdependent and concerted misconduct" by both the signatory and nonsignatory defendants).

sold" crypto-assets "**on Binance.US or Binance.com**", or (iii) "participated in . . . any staking program **through Binance.US or Binance.com**.") (emphasis added); *see also id.* ¶¶ 88, 118, 177, 218, 269–71, 276, 286, 289–91, 296, 386, 410–11, 413, 416, 421.  Thus, there can be no doubt that Plaintiffs' claims are encompassed by the broadly applicable arbitration provision.[30]

### C. All Questions On Arbitrability, Validity, Scope, and Enforceability of the Arbitration Provision Were "Clearly and Unmistakably" Delegated to the Arbitrator

As set forth above, the FAA mandates that Plaintiffs' claims be resolved in arbitration.  But even if there were any doubts as to arbitrability, the Terms of Use require that these threshold issues be decided by an arbitrator.

When parties to an arbitration agreement "clearly and unmistakably" delegate gateway issues of arbitrability, enforceability, and scope of the arbitration agreement, it is solely for the arbitrator to decide those issues.  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  In such circumstances, the U.S. Supreme Court has consistently held that the delegation provision must be enforced by courts by either (i) staying federal litigation under Section 3 of the FAA, or (ii) compelling arbitration under Section 4 of the FAA.  *See, e.g., Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002).

Here, Plaintiffs clearly and unmistakably agreed to delegate issues of arbitrability to the arbitrator.  The Terms of Use's arbitration provision expressly incorporates "the rules of the American Arbitration Association ("AAA")."  Blodgett Decl. ¶ 12.  Courts have repeatedly affirmed that the explicit incorporation of the AAA rules demonstrates a "clear and unmistakable" agreement between the contracting parties to delegate questions of arbitrability to the arbitrator.  *See, e.g.*, *24 Go Wireless, Inc. v. AT & T Mobility II, LLC*, No. 11-20930, 2011 WL 2607099, at *2 (S.D. Fla. June 30, 2011) ("the parties clearly and unmistakably agreed to submit [the validity of the arbitration provision] to arbitration . . . by expressly incorporating the rules of the American Arbitration Association ("AAA") into the arbitration provision of their Agreement."); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.").

---

[30]     Importantly, any question as to the scope of the arbitration provision Plaintiffs may raise have been properly delegated to the arbitrator for adjudication.  *See infra*, § IV.C.

Beyond the express incorporation of the AAA rules into the Terms of Use, the Terms of Use also state that "[a]ny dispute . . . regarding the construction, interpretation, or application of this arbitration provision, including the enforceability, severability, revocability, scope, or validity of this arbitration provision, shall be decided by an arbitrator and not by a court or judge." Blodgett Decl. ¶ 13.  The delegation of these threshold issues to the arbitrator could not be any clearer. Because there can be no serious dispute as to the clear and unmistakable delegation of these gateway issues to the arbitrator, the Court need not look further and it should compel arbitration.  *See Rent-A-Ctr.*, 561 U.S. at 72.

Because the FAA governs the arbitration provision, and all questions of arbitrability are delegated to an arbitrator, if the Court does not dismiss the Complaint for lack of personal or subject matter jurisdiction, the Court should compel arbitration and stay this case pending the resolution of arbitration.  *See* 9 U.S.C. § 3.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Ronaldo respectfully requests oral argument on this Motion, which Ronaldo submits will assist the Court in addressing the factual and legal issues raised by Plaintiffs' Complaint and this Motion.  Ronaldo estimates that two hours will be necessary for argument, divided evenly between Plaintiffs and Ronaldo.

## CONCLUSION

For these reasons, the Court should dismiss this action or, alternatively, compel arbitration.

Dated:  April 25, 2024.                    Respectfully submitted,

                                           HOGAN LOVELLS US LLP
                                           600 Brickell Avenue
                                           Suite 2700
                                           Miami, Florida 33131
                                           305-459-6500 – Telephone
                                           305-459-6550 – Facsimile

                                           By:    /s/ Daniel E. González

                                                  Daniel E. González
                                                  Fla. Bar No. 780030
                                                  daniel.gonzalez@hoganlovells.com
                                                  Daniel Balmori
                                                  Fla. Bar No. 112830
                                                  Daniel.balmori@hoganlovells.com
                                                  Sarah Jayne Cohen
                                                  Florida Bar No. 1010683
                                                  sarah.cohen@hoganlovells.com

                                                  *Counsel for Cristiano Ronaldo*

**CERTIFICATE OF SERIVCE**

        I HEREBY CERTIFY that on April 25, 2024, the foregoing was filed with the Clerk of

Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

                                           By:    /s/ Daniel E. González
                                                   Daniel E. González

41