# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY LOCKHART,

Plaintiff,

v.

BAM TRADING SERVICES INC., et al.,

Defendants.

Case No. 22-cv-03461-JSC

**ORDER RE: MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 40

Jeffrey Lockhart brings this putative securities class action against BAM Trading Services Inc., and its CEO Brian Shroder following the May 2022 collapse of the algorithmic stablecoin UST (a form of cryptocurrency). Defendants' motion to compel arbitration is now pending before the Court. (Dkt. No. 40.[1]) Having considered the parties' briefs and having had the benefit of oral argument on February 2, 2023 and March 5, 2024, as well as supplemental briefing following the Ninth Circuit Court of Appeals decision in *Bielski v. Coinbase, Inc*., 87 F.4th 1003, 1014 (9th Cir. 2023), and again following the March 5, 2024 hearing, the Court GRANTS the motion to compel arbitration.

//

//

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

# BACKGROUND

### A. Parties

BAM Trading Services, which operates under the trade name Binance U.S., is a "crypto-asset exchange that operates a platform on which customers discover, research, buy, and sell digital assets." (Dkt. No. 36, Amended Complaint at ¶¶ 1, 17.)   Among other crypto-assets, BAM's website offered a platform for users to buy and sell UST.  (*Id*. at ¶ 2.)   Plaintiff began using BAM to purchase crypto-assets in December 2020 and first purchased UST through BAM's platform in April 2022.  (Dkt. Nos. 48-1 at ¶ 2; 28-5 at ¶ 3.)

### B. BAM's Terms of Use

To create an account and use BAM's platform, users must check a box indicating the user' consent to BAM's Terms of Use.  (Dkt. No. 49-2 at ¶ 4.)   The Terms of Use are available via a hyperlink next to the checkbox.  (*Id*.)   At the time Plaintiff opened his account in December 2020, the applicable Terms of Use were those that became effective October 30, 2020.  (*Id*. at ¶ 3.) The Terms of Use stated in relevant part:

> Please read these Terms, our Disclosures, Privacy Policy, Trading Rules and any other terms referenced in this document carefully. The Terms you see below are important because they:
>
> - Outline your legal rights;
> - Explain the rights you give to use when you use our Services;
> - Describe the rules you must following when using our Services; and
> - Contain a class action waiver and an agreement to resolve any disputes that may arise by arbitration.
>
> You agree that you have read, understand, and accept these Terms by signing up for an Account(s) (defined below) with BAM, accessing our Website, or BAM APIs (where available). If you do not agree with these Terms, do not access or use the Services, Sites, or any other aspect of our business.

(Dkt. No. 49-3 at 2.)

//

//

//

//

//

//

//

United States District Court
Northern District of California

**United States District Court**
**Northern District of California**

### C. The Arbitration Agreement

The October 2020 Terms of Use also included the following arbitration provision (the "Arbitration Agreement"):

**Arbitration**

If we cannot resolve your dispute through the complaint process (*See* Filing A Complaint), you agree that any dispute or controversy arising out of or relating to these Terms shall be settled through binding arbitration on an individual basis. Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("**AAA**"). The arbitration shall: (1) be conducted by a single, neutral arbitrator in the English language; and (2) be held in San Francisco County, California or in such other place as the parties hereto may agree. The AAA rules, as well as instructions on how to file an arbitration proceeding with the AAA, appear at adr.org, or you may call the AAA at 1-800-778-7879.

Any arbitration hearings will take place in the county (or parish) of the U.S. mailing address listed in your Account. If you choose to file an arbitration proceeding and you are required to pay a filing fee, BAM will reimburse you for that filing fee, unless your claim is for greater than US $10,000, in which case you will be responsible for the filing fee. Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the decision and award, if any, are based. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees or expenses at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

A party who intends to seek arbitration must first send a written notice of the dispute to the other, by certified mail, Federal Express, UPS, or Express Mail (signature required) ("**Notice**"). BAM's address for Notice is: BAM Trading Services Inc., Attn: Legal Department, One Letterman Drive, Building C Suite C3-800, San Francisco, California 94129, USA. The Notice must: (1) describe the nature and basis of the claim or dispute; and (2) set forth the specific relief sought. We agree to use good faith efforts to resolve the claim directly, but if we do not reach an agreement to do so within 30 days after the Notice is received, you or BAM may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by you or BAM shall not be disclosed to the arbitrator until after the arbitrator makes a final decision and award, if any. All documents and information disclosed in the course of the arbitration shall be kept strictly confidential by the recipient and shall not be used by the recipient for any purpose other than for purposes of the arbitration or the enforcement of the arbitrator's decision and award and shall not be disclosed except in confidence to persons who have a need to know for such purposes or as required by applicable law.

(Dkt. No. 49-3 at 19.)

The "complaint process" referenced in the Arbitration Agreement included the following language:

**Complaints**

- **Filing A Complaint**. If you have a complaint, please state the cause of your complaint, how you would like us to resolve the complaint, and any other information you believe to be relevant, in the manner described on our Support page. Upon receiving your complaint, we will open a support ticket and a user complaints officer ("**Complaint Officer**") will review your complaint. The Complaint Officer will review your complaint without prejudice, based on the information you provided and any information we may derive from our records. Within thirty business days ((all days excluding Saturday, Sundays, and any bank holiday in the State of California) ("**Business Days**")) of our receipt of your complaint, the Complaint Officer will use reasonable efforts to address the points raised in your complaint and the Complaint Officer may: (1) offer to resolve your complaint in the way you have requested; (2) reject your complaint and set out the reasons for the rejection; or (3) offer to resolve your complaint with an alternative proposal or solution. In exceptional circumstances, if the Complaint Officer is unable to respond to your complaint within thirty Business Days, the Complaint Officer will use reasonable efforts to send you a holding response indicating the reasons for a delay in answering your complaint and specifying the deadline by which the Complaint Officer will respond to your complaint.

- **Offers.** Any offer of resolution made to you will only become binding on BAM if accepted by you. An offer of resolution will not constitute any admission by us of wrongdoing or liability regarding the complaint's subject matter.

1    (Dkt. No. 49-3 at 16.)

2         **D. Procedural Background**

3         Plaintiff filed this putative class action in June 2022—a month after UST crashed and lost

4    all its value—alleging Defendants failed to comply with state and federal securities laws.  In

5    November 2022, Defendants moved to compel arbitration.  The case has been stayed pending a

6    ruling from the Ninth Circuit Court of Appeals in *Bielski v. Coinbase*, No. 22-15566.  Following

7    the Ninth Circuit's ruling, *see Bielski v. Coinbase, Inc*., 87 F.4th 1003 (9th Cir. 2023), the Court

8    directed the parties to submit supplemental briefing which is now complete.  (Dkt. Nos. 59, 60,

9    61.)  On March 5, 2024, the Court held a further hearing on the motion to compel arbitration.  The

10   parties submitted supplemental briefing following the hearing.  (Dkt. Nos. 70, 71.)

11                           **LEGAL STANDARD**

12        The Federal Arbitration Act ("FAA") provides arbitration agreements "shall be valid,

13   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of

14   any contract."  9 U.S.C. § 2.  Under the FAA, "arbitration agreements [are] on an equal footing

15   with other contracts," and therefore courts must "enforce them according to their terms."  *Rent-A-*

16   *Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citations omitted).  A party may

17   petition a court to compel "arbitration [to] proceed in the manner provided for such agreement."

18   9 U.S.C. § 4.

19        The United States Supreme Court recognizes a "liberal federal policy favoring arbitration

20   agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H.*

21   *Cone Mem'l Hosp. v. Mercury Const. Corp*., 460 U.S. 1, 24-25 (1983) (noting "as a matter of

22   federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

23   arbitration").  Thus, courts must direct parties to proceed to arbitration should it determine: (1) a

24   valid arbitration agreement exists; and (2) "the agreement encompasses the dispute at issue."

25   *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (internal citation

26   omitted).

27                            **DISCUSSION**

28        The parties dispute (1) whether there was an agreement to arbitrate, (2) whether the

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Arbitration Agreement delegates the question of arbitrability to the American Arbitration Association ("AAA") arbitrator or can be properly heard by this Court, and (3) whether the Arbitration Agreement is unconscionable and thus unenforceable.

## I.  WHETHER THERE WAS AN AGREEMENT TO ARBITRATE

At oral argument, Plaintiff agreed that in light of the Ninth Circuit's recent decision *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024), Defendants have produced sufficient evidence Plaintiff consented to the Terms of Use in effect in October 2020 when he signed up for his account in December 2020.  (Dkt. No. 69 at 4-5; *see also* Dkt. No. 65-3.)  So, it is undisputed the parties formed an agreement to arbitrate under the October 2020 terms.

## II.  WHETHER ARBITRABILITY IS DELEGATED TO THE ARBITRATOR

The next question is who decides whether Plaintiff's claims must be arbitrated.  "Gateway" questions of arbitrability are typically for a court, and not the arbitrator, to decide, even when there is a facial agreement to arbitrate. *See Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (stating gateway questions of arbitrability "are presumptively reserved for the court"). Gateway questions include "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* (internal quotation marks and citation omitted). Notwithstanding the presumption of judicial determination, "parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Id.*; *Rent-A-Ctr.,* 561 U.S. at 68-69 ("parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" through a delegation clause.) (internal citation omitted).  In *Brennan v. Opus Bank*, the Ninth Circuit held incorporating the AAA rules into an agreement can evince a "clear and unmistakable" intent to delegate.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015) (holding that at least in a contract between sophisticated parties, "incorporation of the AAA Rules constitutes clear and unmistakable evidence contracting parties agreed to arbitrate arbitrability").

Defendants insist the Arbitration Agreement clearly and unmistakably delegates arbitrability questions to the arbitrator because it incorporates the AAA rules.  The relevant

provision of the Arbitration Agreement states: "Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')." (Dkt. No. 49-3 at 19.) Plaintiff counters this is not clear and unmistakable evidence of delegation because (1) he was an unsophisticated consumer, and (2) the language is insufficient to incorporate the rules.

### A. Sophistication of the Parties

In *Brennan*, the plaintiff was an experienced attorney and businessman who "became the Executive Vice President and Director for Strategy and Corporate Development for Opus Bank in December 2010, when he signed an Employment Agreement with Opus Bank" which included the arbitration provision incorporating the AAA rules. 796 F.3d at 1126-27. It was thus undisputed he was a sophisticated party. *Id.* Because the issue of sophistication was only raised at oral argument, the Ninth Circuit did not reach the issue. *Id.* at 1130. However, it noted its "holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Id.* The court explicitly left open "the possibility that this rule could also apply to unsophisticated parties or to consumer contracts" which would be consistent with "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Id.* at 1130-31 (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)*; Republic of Arg. v. BG Grp. PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir.2005); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–12 (1st Cir. 2009)).

The Ninth Circuit has still not answered this question. *See Patrick*, 93 F.4th at 481 ("Our circuit has not yet decided whether *Brennan's* holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer."). District courts throughout the Ninth Circuit remain split over whether the incorporation of

United States District Court
Northern District of California

1    arbitration rules, such as the AAA rules, constitute "clear and mistakable" evidence the parties

2    intended for the arbitrator to decide arbitrability issues when one of the parties is "non-

3    sophisticated." *See Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1252–53 (N.D. Cal.

4    2019) (explaining split). Recently, several "courts in this district have concluded that

5    incorporation of the AAA or JAMS rules is sufficient for a court to find intent to delegate

6    arbitrability, regardless of the parties' sophistication." *Singh v. Payward, Inc*., No. 23-CV-01435-

7    CRB, 2023 WL 5420943, at *7 (N.D. Cal. Aug. 22, 2023); *see, e.g.*, *Bazine v. Kelly Servs. Global,*

8    *LLC*, No. 22-cv-7170-BLF, 2023 WL 4138252, at *6 (N.D. Cal. June 21, 2023) (siding with

9    courts holding incorporation of rules is adequate regardless of sophistication of parties); *Gerlach*

10   *v. Tickmark, Inc*., No. 21-cv-2768-YGR, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) ("the

11   greater weight of authority" holds incorporating rules is enough to delegate).

12         This Court also concludes incorporation of the AAA rules is clear and unmistakable

13   evidence of an intent to arbitrate regardless of the parties' sophistication. First, this conclusion is

14   consistent with the approach taken by other federal courts of appeal. *See Brennan*, 796 F.3d at

15   1131 (collecting circuit court decisions). It is also consistent with California law which governs

16   the contract interpretation question here. *See McLellan v. Fitbit, Inc*., No. 3:16-CV-00036-JD,

17   2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017) ("California law…does not make a categorical

18   distinction between 'sophisticated' and 'unsophisticated' parties for purposes of enforcing an

19   incorporated delegation clause.") (citing *Rodriguez v. American Technologies, Inc*., 136 Cal. App.

20   4th 1110, 1123 (Cal. Ct. App. 2006)).

21         Second, an alternative approach "requires impractical line-drawing." *Singh*, 2023 WL

22   5420943, at *8; *see also McLellan*, 2017 WL 4551484, at *3 ("A party-by-party assessment of

23   sophistication under some loose amalgam of personal education, line of work, professional

24   knowledge, and so on would undermine contract expectations in potentially random and

25   inconsistent ways. Applying such an individualized inquiry in the class action context would

26   likely raise additional problems.").

27         Third, Plaintiff has not alleged, let alone offered evidence, that he is an unsophisticated

28   consumer. To the contrary, in seeking to be appointed as lead plaintiff in this matter, Plaintiff,

United States District Court
Northern District of California

1    who works as an orthodontist, represented himself as an "experienced crypto investor" of more

2    than five years.  (Dkt. No. 28 at 5.)  "He purchased over $437,151.82 in UST on Binance U.S.,

3    investments on which he has suffered losses of at least $406,322.78."  (*Id*.)  As an experienced

4    crypto trader investing over $400,000, and a professional who himself has customers, he is a far

5    cry from the unsophisticated consumers in the cases on which he relies.  (Dkt. No. 48 at 11 (citing

6    *Ingalls v. Spotify USA, Inc*., No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14,

7    2016) ("two ordinary consumers" who signed up for Spotify's free music streaming service);

8    *Meadows v. Dickey's Barbecue Rests. Inc*., 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015) (finding

9    individuals who had never run a business or owned a franchise before unsophisticated when they

10   were "asked to sign a complicated, 60-page agreement, drafted by Dickey's, containing a myriad

11   of legal terms").  It is thus unsurprising he does not argue he himself is unsophisticated, and

12   instead contends "he is not a large corporation *or* trained in the law—he is a 'far less

13   sophisticated' than Binance."  (Dkt. No. 48 at 18 (citation omitted).)  No case holds one must be a

14   corporation or a lawyer to be bound by a delegation clause.

15           Finally, Plaintiff's reliance at oral argument on *Mikhak v. Univ. of Phoenix*, No. C16-

16   00901 CRB, 2016 WL 3401763 (N.D. Cal. June 21, 2016), is unavailing.  The court there declined

17   to enforce the delegation clause "because the courts remain divided on whether parties must be

18   sophisticated to delegate arbitrability and because Mikhak's sophistication is subject to dispute, it

19   is not certain that Mikhak clearly and unmistakably delegated arbitrability."  *Id*. at 5.  But as the

20   Ninth Circuit recently clarified in *Fli-Lo Falcon, LLC v. Amazon.com, Inc*., No. 22-35818, 97

21   F.4th 1190, 2024 WL 1547091 (9th Cir. Apr. 10, 2024), Plaintiff must identify evidence that

22   creates a dispute of fact as to sophistication, and Plaintiff has not done so here.  *Id*. at *8 (citing

23   *Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667, 670 (9th Cir. 2021) (holding motions to compel

24   arbitration are subject to the summary judgment standard)); *see also Patrick*, 93 F.4th at 481

25   ("Plaintiffs offered no evidence concerning their sophistication or lack thereof to the district

26   court.").

27           So, the Court rejects Plaintiff's "unsophisticated consumer" attempt to avoid the delegation

28   clause.

United States District Court
Northern District of California

## B.  The Arbitration Agreement Sufficiently Invokes the AAA Rules

Plaintiff also insists incorporating the AAA rules generally—without appending the AAA Rules or specifying the AAA Consumer Arbitration Rules apply—is insufficient to clearly and unmistakably delegate arbitrability to the arbitrator. No court has so held. In *Fli-Lo-Falcon*, the arbitration agreement included the following language: "The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879." The Ninth Circuit assumed this language constituted an enforceable delegation provision. *Fli-Lo Falcon*, 2024 WL 1547091, at *7. Further, the Ninth Circuit has held the failure to attach the AAA rules does not render an arbitration agreement procedurally unconscionable. *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1262 (9th Cir. 2017). Moreover, Plaintiff does not contend there is any difference as to a delegation clause among the various AAA rules; regardless of which AAA rules apply, the arbitrator decides arbitrability. *See Khraibut v. Chahal*, No. C15-04463 CRB, 2016 WL 1070662, at *5 (N.D. Cal. Mar. 18, 2016) (holding arbitration agreement that incorporated AAA rules without specifying *which* AAA rules clearly and unmistakably delegated arbitrability because regardless of which rules apply, "the same [delegation] language applies and does not create enough ambiguity or confusion to defeat a 'clear and unmistakable' showing").

None of the cases Plaintiff cites, in his briefs and at oral argument, persuades the Court otherwise. In *Dembiczak v. Fashion Nova, LLC*, No. 2:23-CV-00408-LK, 2024 WL 580701 (W.D. Wash. Feb. 13, 2024), for example, the arbitration agreement stated the arbitration would be conducted in accordance with specific rules *that did not exist. Id*. at *5. And in *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022), the party bringing the claim could choose between AAA's consumer arbitration rules or the BBB's rules for binding arbitration, and the latter did not contain an explicit delegation clause. *Id*. at 1032. No such ambiguity exists here.

Finally, Plaintiff contends the Arbitration Agreement does not adequately incorporate the AAA rules. Not so. The Agreement explicitly provides arbitration will be conducted "in accordance with the rules of the American Arbitration Association." (Dkt. No. 49-3 at 19.) Those rules delegate arbitrability to the arbitrator. So, "in accordance with the rules of the American

Arbitration Association," the arbitrator decides arbitrability here. In *Davenport v. Nvidia Corp.*, No. 23-CV-01877-PCP, 2024 WL 832387 (N.D. Cal. Feb. 28, 2024), for example, the court concluded:

> [the] Agreement does not include a delegation provision explicitly. It states only that NVIDIA customers with certain disputes agree to "submit the dispute to binding arbitration before an arbitrator from Judicial Mediation and Arbitration Services ('JAMS') located in Santa Clara County, California under the Optional Expedited Arbitration Procedures then in effect for JAMS."

*Id.* at *3. The court contrasted that language with the language in *Brennan* when "the incorporation was *express*—the arbitration agreement at issue stated that claims "'shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association.'" *Id.* (quoting *Brennan*, 796 F.3d at 1128) (emphasis in original). The language here mirrors that in *Brennan*: "Arbitration shall be conducted in accordance with the rules of the American Arbitration Association ('AAA')." (Dkt. No. 49-3 at 19.)

***

Accordingly, the parties clearly and unmistakably delegated the question of arbitrability to the arbitrator, and, consequently, the next question is whether the agreement to delegate arbitrability is unconscionable.

## III.    WHETHER THE DELEGATION CLAUSE IS UNCONSCIONABLE

Under the FAA, an arbitration agreement is invalid when it is unenforceable under "generally applicable contract defenses" recognized by state law, such as "unconscionability." *Concepcion*, 563 U.S. at 339 (internal quotation marks and citation omitted). Under California law, plaintiffs seeking to invalidate a contractual provision as unconscionable must prove both procedural and substantive unconscionability. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)). However, "California courts employ a sliding scale to determine unconscionability, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa." *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1093 (2021). Procedural unconscionability

1    "focus[es] on oppression or surprise due to unequal bargaining power" whereas substantive

2    unconscionability focuses "on overly harsh or one-sided results." *Sonic-Calabasas A, Inc. v.*

3    *Moreno*, 57 Cal. 4th 1109, 1133 (2013).

4         To challenge a delegation provision on unconscionability grounds, "the party resisting

5    arbitration must specifically reference the delegation provision and make arguments challenging

6    it," but the party can "use the same arguments to challenge both the delegation provision and

7    arbitration agreement, so long as the party articulates why the argument invalidates each specific

8    provision." *Bielski*, 87 F.4th at 1011.  Defendants do not dispute Plaintiff properly challenged the

9    delegation clause as *Bielski* requires.  (Dkt. No. 69 at 20.)

         **A.**     **Procedural Unconscionability**

10        "Procedural unconscionability concerns the manner in which the contract was negotiated

11   and the respective circumstances of the parties at that time, focusing on the level of oppression and

12   surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th

13   Cir. 2013) (internal citations omitted); *see also Sanchez v. Valencia Holding Col, LLC*, 61 Cal. 4th

14   899, 910 (2015) (describing procedural unconscionability as focusing on "oppression or surprise

15   due to unequal bargaining power.") (internal citation omitted).

16        Plaintiff argues as a threshold matter the delegation clause is procedurally unconscionable

17   because it is part of a contract of adhesion.  A "contract of adhesion signifies a standardized

18   contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the

19   subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal.

20   4th at 113 (cleaned up).  Defendants concede, as they must, "take-it-or-leave-it adhesion contracts

21   always contain some degree of procedural unconscionability."  *Bielski*, 87 F.4th at 1014 (cleaned

22   up).  Defendants nonetheless maintain the availability of market alternatives defeats Plaintiff's

23   argument regarding the adhesive nature of the contract.  However, "[t]he availability of alternative

24   business opportunities does not preclude a finding of procedural unconscionability under

25   California law." *Pokorny v. Quixtar*, Inc., 601 F.3d 987, 997 (9th Cir. 2010) (internal citations

26   omitted).  Plaintiff insists regardless of any market alternatives the delegation clause is

27   procedurally unconscionable because (1) the pre-arbitration dispute process is onerous, and (2) the

28

United States District Court
Northern District of California

Terms of Use neither attach the AAA rules nor specify which AAA rules apply.

### 1. The Pre-Arbitration Dispute Process

In *Bielski*, the Ninth Circuit considered whether Coinbase's three-step dispute process rendered the agreement procedurally unconscionable. *Bielski*, 87 F.4th at 1014. Under the agreement "a user must first try resolving any dispute with Coinbase informally, and if that fails, a user must file a formal complaint with Coinbase before initiating arbitration." *Id.* "Coinbase has obligations under this process too: it must acknowledge receipt of the complaint; review and evaluate it; and within fifteen business days, resolve the issue in the way requested by the user, reject the user's complaint and provide reasons why, or offer an alternative solution." *Id.* *Bielski* concluded these "pre-arbitration dispute resolution procedures are not onerous or beyond the reasonable expectation of the user" and so the level of procedural unconscionability was low. *Id.*

BAM's agreement likewise references a three-step process: informal complaint, written notice of intent to arbitrate, and arbitration. (Dkt. No. 49-3 at 16, 19.) Plaintiff insists BAM's agreement is more onerous than in *Bielski* and thus warrants a finding of a high level of procedural unconscionability because there is no time limit to the complaint process, and after a customer submits a written notice of intent to arbitrate, the customer must wait another 30 days before commencing the arbitration process. Neither argument is availing. First, Plaintiff ignores a critical distinction between BAM's agreement and that in *Bielski*—the complaint process here is not mandatory. The arbitration provision states "[i]f we cannot resolve your dispute through the complaint process (See Filing a Complaint), you agree that any dispute or controversy arising out of or relating to these Terms shall be settled through binding arbitration on an individual basis." (Dkt. No. 49-3 at 19.) It does not require customers to first exhaust the complaint process. The lack of mandatory language for the complaint process is highlighted by BAM's use of mandatory language later in the same section when discussing the requirement of written notice: "[a] party who intends to seek arbitration **must** first send a written notice of the dispute to the other, by certified mail, Federal Express, UPS, or Express Mail (signature required) ("Notice")." (*Id.* (emphasis added).) Further, in *Bielski*, the agreement allowed Coinbase to seek dismissal if the consumer does not follow the complaint process:

> If we cannot resolve the dispute through the Coinbase support team,
> you and we agree to use the Formal Complaint Process set forth
> below. You agree to use this process before filing any arbitration
> claim or small claims action. If you do not follow the procedures set
> out in this Section before filing an arbitration claim or suit in small
> claims court, we shall have the right to ask the arbitrator or small
> claims court to dismiss your filing unless and until you complete the
> following steps.

*Bielski v. Coinbase, Inc.*, No. C 21-07478 WHA, 2022 WL 1062049, at *3 (N.D. Cal. Apr. 8,

2022).  The BAM agreement does not include any similar provision, further highlighting that the

complaint process is not a mandatory prerequisite to filing suit.

But, even if the process was mandatory, Plaintiff does not explain why a 30-day time

period for responding to complaints (*BAM*) as opposed to a 15-day time period (*Bielski*) is onerous

beyond reasonable expectations.  And as Plaintiff concedes, both agreements allow the 30 or 15-

day time periods to be extended under exceptional circumstances.  (Dkt. No. 60 at 10 n.2.)   While

*Bielski's* clause contains a date certain by which Coinbase would resolve a dispute, BAM's

agreement requires the complaint officer use reasonable efforts to resolve the dispute in 30 days

absent exceptional circumstances, and even then, the complaint officer is required to provide the

consumer with a deadline by which the officer will respond. (Dkt. No. 49-3 at 16.)  Plaintiff does

not explain how such a provision is beyond a consumer's reasonable expectations.

Finally, Plaintiff emphasizes BAM's requirement that consumers mail their written notice

of an intent to arbitrate.  (Dkt. No. 49-3 at 19.)  To be sure, to require a consumer mail the notice

via certified mail, Federal Express, UPS, or Express Mail—as opposed to also providing an online

option—is likely to deter consumers from filing notice.  But Plaintiff has not cited any California

or federal case holding mail notice in any context is unconscionable. And waiting 30 days after

mailing the complaint to initiate arbitration is not so onerous as to be beyond the reasonable

expectation of the consumer.

So, as in *Bielski*, the pre-arbitration dispute resolution process warrants at most a low level

of procedural unconscionability.  *Bielski*, 87 F.4th at 1014 ("Pre-arbitration dispute resolution

procedures are commonplace and can be both 'reasonable and laudable'" and warrant a low level

of procedural unconscionability).

13

## 2. Incorporation of AAA Rules by Reference

Failure to attach the AAA rules and/or failure to specify which AAA rules apply does not in and of itself warrant a finding of procedural unconscionability.

> [A] viable claim of procedural unconscionability for failure to identify the particular version of the applicable arbitral rules—like a claim for failure to attach the rules themselves—depends in some manner on the substantive unfairness of a term or terms contained within the unidentified version of the rules applicable to the dispute. That is, if the unidentified rules are not themselves substantively unfair, then the employer cannot be faulted for vaguely referring to such rules.

*Davis v. Kozak*, 53 Cal. App. 5th 897, 909 (2020) (citation omitted); *see also Poublon*, 846 F.3d at 1262 ("While courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement, incorporation by reference, without more, does not affect the finding of procedural unconscionability.") (cleaned up). The question then is whether Plaintiff has identified a substantive unfairness in the AAA arbitration rules. He has not.

Plaintiff's reliance on *Shahtout v. California Psychcare, Inc.*, 562 F. Supp. 3d 913, 928 (C.D. Cal. 2022), is unpersuasive. *Shahtout* relied on two California Court of Appeals cases, *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004), and *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003), to conclude failure to provide notice of the specific applicable AAA rules weighs in favor of a finding of procedural unconscionability. *Shahtout*, 562 F. Supp. 3d at 927-28. However, as the California Supreme Court clarified *in Baltazar v. Forever 21, Inc.*, *Fitz* and *Harper* do not stand for the proposition that a "failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability"; rather, "[t]hese cases [] stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." 62 Cal. 4th 1237, 1246 (2016) (quoting *Harper*, 113 Cal. App. 4th at 1406); *see also Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 249 (2016) ("following *Baltazar*, the failure to attach the applicable AAA rules did not increase the procedural unconscionability of the

United States District Court
Northern District of California

application or its arbitration provision").  Plaintiff has not identified any "artfully hidden" terms in the AAA rules at issue here.

Accordingly, Defendants' failure to attach or reference the specific AAA rules warrants no more than a low—if any—finding of procedural unconscionability.

### B.  Substantive Unconscionability

Under California law, "[s]ubstantive unconscionability focuses on the one-sidedness of the contract terms." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at 114).  A delegation "clause may be found substantively unconscionable where it imposes an unfair burden that is different from the inherent features and consequences of delegation clauses." *Pinela v. Neiman Marcus Grp., Inc*., 238 Cal. App. 4th 227, 246 (2015).

Plaintiff insists the delegation clause is substantively unconscionable because it (1) lacks mutuality, (2) imposes an onerous unfair burden in the form of a pre-arbitration dispute process beyond that of a typical delegation clause, (3) reserves to itself the unilateral ability to amend or modify the Terms, (4) is silent on the issue of arbitration costs, and (5) the Terms of Use contain a limitation of liability provision.  (Dkt. Nos. 48 at 21-25, 60 at 13-17, 70 at 11-14.)   Recent Ninth Circuit decisions dispose of the first, second, and third arguments.  *Patrick*, 93 F. 4th at 479-80 (disposing the third argument); *Bielski*, 87 F.4th at 1014-15 (disposing the first and second arguments).  The final argument was raised by Plaintiff for the first time at oral argument and the Court granted the parties leave to submit supplemental briefing regarding it and arbitration costs issue.  (Dkt. Nos. 70, 71.)

#### 1.  Lack of Mutuality and the Pre-Arbitration Dispute Process

In *Bielski*, the Ninth Circuit considered whether "[a] lack of mutuality and the presence of user-only pre-arbitration dispute resolution processes" warranted a finding of substantive unconscionability.  87 F.4th at 1015.  While the court began with the premise "both weigh toward finding a provision substantively unconscionable," it concluded both established at most a low level of substantive unconscionability.  *Id*.  Given the similarities between the *Bielski* provisions and the parties' agreements here, *Bielski* is dispositive.  As here, the Coinbase arbitration provision only required users to arbitrate.  *Id*. "But because 'the California Supreme Court has

15

United States District Court
Northern District of California

1    confirmed that a one-sided contract is not necessarily unconscionable,' something more than the

2    absence of mutuality is required for us to find the provision unconscionable." *Id.* (quoting

3    *Tompkins v. 23andMe, Inc.*, 840 F.3d at 1030). The *Bielski* court concluded the pre-arbitration

4    dispute resolution process did not establish "something more." *Bielski*, 87 F.4th at 1015.

5         Plaintiff contends the pre-arbitration dispute process here establishes the something more

6    because it does not require BAM to resolve the disputes within a reasonable time and it only

7    requires customers to pursue the dispute resolution process. The latter argument was flatly

8    rejected by *Bielski*. *Bielski*, 87 F.4th at 1015 ("It is undisputed that only Coinbase's users must

9    engage in the pre-arbitration dispute resolution process, giving Coinbase a 'free peek' at users'

10   potential claims without affording users that same opportunity. But we do not find these pre-

11   arbitration procedures to be overly harsh or unfairly one-sided."). And the former argument is

12   likewise unavailing for the reason discussed above—the complaint process is not mandatory.

13   Further, BAM's agreement requires the complaint officer use reasonable efforts to resolve the

14   dispute in 30 days absent exceptional circumstances, and even then, the complaint officer is

15   required to provide the consumer with a deadline by which the officer will respond. (Dkt. No. 49-3

16   at 16.)

17        So, the "lack of mutuality in the delegation provision, combined with the pre-arbitration

18   dispute resolution process establishes, at most, a low level of substantive unconscionability."

19   *Bielski*, 87 F.4th at 1015.

20        **2.    Unilateral Amendment of Terms**

21        Plaintiff also argues the unilateral modification provision renders the agreement

22   substantively unconscionable. The Ninth Circuit in *Patrick* expressly rejected this argument: "the

23   presence of a unilateral modification provision, without more, does not render a separate

24   arbitration clause at all substantively unconscionable" as "California courts have held that the

25   implied covenant of good faith and fair dealing prevents a party from exercising its rights under a

26   unilateral modification clause in a way that would make it unconscionable." *Patrick*, 93 F. 4th at

27   480 (quoting *Tompkins v. 23andMe, Inc.*, 840 F.3d at 1033 (considering whether a provision

28   giving "Defendants the unilateral right to amend terms with no notice to users, presents at least

some substantive unconscionability" (cleaned up). Because Plaintiff has not argued "something more" than the mere presence of the unilateral modification provision, the existence of this clause does not establish any substantive unconscionability.

### 3. Arbitration Costs

Finally, Plaintiff insists the delegation clause is substantively unconscionable because it is silent as to costs if BAM initiates arbitration as well as on costs beyond the initial filing fee regardless of which party initiates. (Dkt. Nos. 48 at 26, 60 at 16-17, 70 at 8-11.)

As a preliminary matter, Defendants insist "Plaintiff's payment argument fails because the payment issue does not address the delegation clause but, at most, the arbitration agreement so it should be delegated to the arbitrator." (Dkt. No. 61 at 5.) Defendants cite no authority for this proposition and Plaintiff expressly challenges the delegation clause as substantively unconscionable based on the fee issue. (Dkt. No. 60 at 16.) Defendants do not dispute—nor could they—that the issue of cost apportionment applies equally to arbitration under the delegation clause as to arbitration of the parties' dispute generally; that is, the parties incur the same types of arbitration costs to decide the arbitrability question delegated to the arbitrator as when the arbitrator decides the underlying dispute between the parties. *See Lim v. TForce Logistics, LLC,* 8 F.4th 992, 1003 (9th Cir. 2021) (concluding arbitration agreement's requirement that the plaintiff pay half the fees, "including with respect to the gateway issue of arbitrability," made a delegation clause substantively unconscionable). So, the cost issue goes to the conscionability of the delegation clause.

The Arbitration Agreement's lone provision regarding costs/fees states:

> If you choose to file an arbitration proceeding and you are required to pay a filing fee, BAM will reimburse you for that filing fee, unless your claim is for greater than US $10,000, in which case you will be responsible for the filing fee.

(Dkt. No. 49-3 at 19.) Under California Code of Civil Procedure, Section 1284.2,

> [u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit.

United States District Court
Northern District of California

1   Cal. Civ. Proc. Code § 1284.2.  Plaintiff insists because the Arbitration Agreement is silent as to

2   fees and costs other than the filing fees, and silent as to all fees if BAM initiates arbitration,

3   Section 1284.2 requires the parties to split any other fees or costs.  Including a cost-sharing

4   provision in an arbitration agreement, "impermissibly imposes a 'type of expense that [plaintiff]

5   would not be required to bear if he [ ] were free to bring the action in court.'" *Lim*, 8 F.4th at 1003

6   (quoting *Armendariz*, 24 Cal. 4th at 110–11); *see also Reyes v. Hearst Commc'ns, Inc.*, No. 21-

7   16542, 2022 WL 2235793, at *1 (9th Cir. June 22, 2022) ("The district court correctly held that

8   Hearst's arbitration agreement with Reyes violated this rule because it contained a provision

9   requiring Reyes to pay an equal share of all arbitration fees.").  While *Lim*, *Armendariz*, and *Reyes*

10  all arose in the context of employment agreements, "Courts have also found cost-shifting

11  provisions unconscionable in contexts beyond employment agreements."  *Shahtout*, 562 F. Supp.

12  3d at 925 (collecting cases). For example, in *Ting v. AT&T*, 319 F.3d 1126, the Ninth Circuit held

13  a cost-splitting provision in a consumer contract unconscionable because "it imposes on some

14  consumers costs greater than those a complainant would bear if he or she would file the same

15  complaint in court." *Id.* at 1151.

16          In their supplemental reply brief, Defendants argue for the first time the Arbitration

17  Agreement is not silent as to fees because it incorporates the AAA rules, and the applicable AAA

18  Consumer Rules address all other payments.  In particular, Defendants urge these rules provide:

19  "(1) a $200 filing fee for the consumer and $1,700 for the business (for one arbitrator), (2) the

20  'business' pays the arbitrator fees unless the consumer volunteers, and (3) low-income consumer

21  exemptions."   (Dkt. No. 61 at 5-6 (citing AAA Consumer Rules pp. 33-34, "Costs of Arbitration

22  (Including AAA Administrative Fees)." (Consumer Rules.pdf (adr.org)).)

23          Defendants did not initially submit a copy of these rules, but they have done so with their

24  second supplemental reply brief.  (Dkt. No. 71-4.)  However, the fee schedule in the document

25  Defendants provide does not appear to be the updated fee schedule.  *See* Consumer Arbitration

26  Rules, Costs of Arbitration, updated January 15, 2024,

27  https://go.adr.org/consumerfeeschedule.html (last visited Apr. 12, 2024).  The filing fee in this

28  updated schedule is slightly higher than the amount of fees stated by Defendants ($225 versus

18

1    $200), but nonetheless lower than the $405 fee to file an action in this Court and thus does not run

2    afoul of *Armendariz*. Further, the AAA Consumer Rules Fee Schedule provides that the other

3    fees—the case management fees, hearing fees, and arbitrator's compensation—shall be paid by the

4    business, unless, in the case of the arbitrator's fees, the "individual, post dispute, voluntarily elects

5    to pay a portion of the arbitrator's compensation." *See*

6    https://go.adr.org/consumerfeeschedule.html.

7        If incorporation of the AAA rules, which in turn give the arbitrator the authority to decide

8    arbitrability, is "clear and unmistakable evidence that contracting parties agreed to arbitrate

9    arbitrability," there is no principled basis to conclude incorporation of the AAA rules which

10   include a fee schedule does not also incorporate the AAA fee schedule. *See Brennan*, 796 F.3d at

11   1130. Because the Arbitration Agreement incorporates the AAA rules, and thus the AAA fee

12   schedule, the agreement is not silent as arbitration costs; so, California Civil Code Section 1284.2

13   does not apply.

14       This holding is consistent with the Ninth Circuit's reasoning in *Lifescan, Inc. v. Premier*

15   *Diabetic Servs., Inc*., 363 F.3d 1010, 1011 (9th Cir. 2004), which considered what happens when a

16   party to an arbitration agreement is unable to pay its pro-rata share of arbitration fees. The party

17   seeking to compel the other to pay its pro rata share argued Section 1284.2 required pro rata

18   apportionment of fees. *Id*. at 1013. The Ninth Circuit rejected this argument noting "section

19   1284.2 comes into play only if the parties' agreement is silent about the apportionment of fees"

20   and the agreement at issue was "not silent because it incorporates the rules of the AAA, which do

21   cover the apportionment of fees: They leave it up to the arbitrators." *Id*. So too here. Because the

22   Arbitration Agreement is not silent as to fees, Section 1284.2 does not apply.

23       Plaintiff attempts to avoid this conclusion by arguing in his second supplemental brief that

24   because this is a putative class action, the "AAA Supplementary Rules of Class Arbitration,"

25   rather than the consumer rules, apply. (Dkt. No. 70 at 10.) The AAA Class Arbitration rules,

26   unlike the consumer rules, do not require the business to pay the arbitration costs and fees. *See*

27   AAA Supplementary Rules for Class Arbitrations,

28   https://www.adr.org/sites/default/files/Supplementary_Rules_for_Class_Arbitrations.pdf (last

United States District Court
Northern District of California

19

United States District Court
Northern District of California

1  visited Apr. 22, 2024).  But, Plaintiff himself pleads the applicability of the consumer rules.  The

2  consumer rules state in relevant part the parties have made the rules "part of their arbitration

3  agreement whenever they have provided for arbitration by the" AAA and "the arbitration

4  agreement is contained within a consumer agreement…that does not specify a particular set of

5  rules." (Dkt. No. 71-4 at 10.)  As explained above, the Arbitration Agreement does not specify a

6  particular set of AAA rules.  And, Plaintiff alleges the BAM Terms of Use is a "consumer

7  contract."  (Dkt. No. 36 at ¶ 185.)  So, the AAA consumer rules apply.  Further, Plaintiff alleges

8  the Terms of Use include a class action waiver.  (Dkt. No. 36 at ¶¶ 172, 180, 184, 185.)  Having

9  alleged the Terms of Use formed a consumer contract containing a class action waiver, Plaintiff

10  cannot now argue the delegation clause is substantively unconscionability because a consumer

11  would hesitate to initiate arbitration because the AAA class action rules do not require the

12  business pay the fees. *See Lim*, 8 F.4th at 1003 (discussing the chilling effect of "a fee-shifting

13  clause [that] puts [plaintiffs] who demand arbitration at risk of incurring greater costs than they

14  would bear if they were to litigate their claims in federal court" rendering it "substantively

15  unconscionable.") (internal citation omitted).

16          The Arbitration Agreement incorporates the AAA rules and under the AAA Consumer

17  Rules Fee Schedule, the only fee Plaintiff will bear is the $205 filing fee.  That fee is less than the

18  filing fee to bring an action in court.  As Plaintiff has not argued he cannot afford this fee, the

19  requirement he do so is not substantively unconscionable.

20                    **4.          Limitation on Liability Provision**

21          At oral argument, Plaintiff argued for the first time the limitation on liability clause in the

22  Terms of Use renders the agreement substantively unconscionable.  (Dkt. No. 69 at 47-49.)

23  Defendants insist this argument goes to the validity of the contract as a whole and not the

24  delegation clause.

25          The limitation on liability clause in the Terms of Use appears five pages before the

26  Arbitration Agreement and states:

27                    **Limitations Of Liability**. IN NO EVENT SHALL ANY OF THE
                     INDEMNIFIED PERSONS BE LIABLE TO YOU OR ANY
28                    OTHER PERSON OR ENTITY FOR ANY LOSS OF BUSINESS,

PROFITS OR OPPORTUNITIES, OR ANY SPECIAL, PUNITIVE, AGGRAVATED, INCIDENTAL, INDIRECT OR CONSEQUENTIAL LOSSES OR DAMAGES. WHETHER ARISING OUT OF OR IN CONNECTION WITH OUR SITES, THE PLATFORM, YOUR ACCOUNT(S), THE SERVICES, THESE TERMS, THE TRADING RULES, THE DISCLOSURES, THE PRIVACY POLICY, AND/OR ANY AGREEMENT ENTERED INTO PURSUANT TO, OR IN CONNECTION WITH, THESE TERMS OR OTHERWISE. OUR LIABILITY, AND THE LIABILITY OF THE INDEMNIFIED PERSONS, TO YOU OR ANY THIRD PARTIES IN ANY CIRCUMSTANCE IS LIMITED TO THE ACTUAL AMOUNT OF LOSS OR DAMAGE WHICH IS CAUSED DIRECTLY AND IS REASONABLY FORESEEABLE BY OUR BREACH OF THESE TERMS AND SHALL IN NO EVENT EXCEED $3,000.

(Dkt. No. 49-3 at 13-14.)  Plaintiff contends Defendants will use this limitation on liability to "preclude Plaintiff from recovering the actual loss he suffered, approximately $405,322.78 (see ECF 28 at 8), and from recovering the attorneys' fees he is entitled to as a statutory remedy under his California claims.  (Dkt. No. 70 at 12.)

 "[A] party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision."  *Bielski*, 87 F.4th at 1011.  Plaintiff has not articulated how his arguments regarding the limitation on liability provision render the delegation clause unconscionable.  Rather, Plaintiff's arguments all go to the unconscionability of the Terms of Use as a whole, and maybe also the Arbitration Agreement, and thus do not invalidate the arbitrator deciding arbitrability in the first instance pursuant to the delegation clause.  *See Falls v. Soulbound Studios, LLC*, No.2:21-cv-00961-SVW-JPR, 2021 WL 4295137, at *3 (C.D. Cal. July 6, 2021) (holding limitation of liability clause did not invalidate delegation clause).

The cases on which Plaintiff relies considered whether a limitation on liability clause rendered an arbitration agreement unconscionable, not a delegation clause.  *See Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204, 210 (2020) (finding the agreement failed to specifically delegate the question of enforceability to the arbitrator and thus the Court would determine whether the arbitration provision in the contract was enforceable.); *MacClelland*, 609 F. Supp. 3d at 1032 ("no[] clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability"); *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712, 722 (N.D. Cal. 2012) (no

United States District Court
Northern District of California

delegation clause).  In *Benitez v. GMRI, Inc.,* No. 22-CV-2031-L-JLB, 2023 WL 5490136, at *6 (S.D. Cal. Aug. 24, 2023), the court considered the unconscionability of the agreement as a whole and the arbitration clause concurrently, but did not address how particular provisions rendered the delegation clause in particular unconscionable.

To prevail on his challenge to the delegation clause based on the limitation on liability, Plaintiff must explain how the limitation on liability as applied to the delegation clause renders the delegation clause unconscionable.  *See Rent-A-Ctr.,* 561 U.S. at 74.  He has not done so.  The limitation on liability will not apply to arbitration proceedings deciding whether the dispute is arbitrable, including whether the Arbitration Agreement is unconscionable, as such proceedings do not determine liability.  Plaintiff's invocation of *Lim,* 8 F.4th at 1004, is misplaced as there the arbitration agreement allowed the arbitrator to award fees to the prevailing party, including the defendant/employer, and such fees could include those incurred during the initial arbitrability proceedings.  Plaintiff does not argue such similar provision exists here.

\*\*\*

Plaintiff has shown only a low degree of procedural unconscionability.  Such a showing is insufficient to render the delegation clause unconscionable without a high degree of substantive unconscionability—a showing that Plaintiff has not made.

## IV.  WHETHER SHRODER CAN INVOKE THE ARBITRATION AGREEMENT

BAM's CEO Brian Shroder is not a party to the Terms of Use, but seeks to invoke the Arbitration Agreement to compel arbitration as to the claims against him.  Plaintiff brings three claims for control person liability under the Section 15 of the Securities Act, Section 20 of the Exchange Act, and the California Securities Act, Cal. Corp. Code 25504.  (Dkt. No 36 at ¶¶ 211-218, 265-270, 291-296.)

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).  Defendants contend Mr. Shroder can invoke the arbitration clause under either an agency or equitable estoppel theory.  California law governs this determination.

*Kramer*, 705 F.3d at 1128.

## A.    Agency

In California, "an agent may enforce an arbitration agreement to which its principal is a party." *Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) (internal citations omitted); *see also Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 418 (1985) (holding defendants who were sued as agents of corporate defendant, a signatory to arbitration agreement, could invoke the arbitration clause as to claims arising out of arbitration agreement, even though they were not signatories to contract). Plaintiff alleges Mr. Shroder was "a control person over Binance U.S." and as "CEO of Binance U.S., Shroder had the power and authority to direct the management and activities of Binance U.S. and its employees, and to cause Binance U.S. to engage in the wrongful conduct complained of [in the complaint]." (Dkt. No 36 at ¶¶ 18, 214, 268.) Plaintiff seeks to hold Mr. Shroder jointly and severally liable for all of BAM's conduct and alleges he "knowingly and culpably participated in, and/or aided and abetted, Binance U.S.'s violations of the Securities Act alleged." (*Id*. at ¶¶ 217-218, 270, 293, 296.)

Plaintiff contends even if Mr. Shroder was BAM's agent, he cannot invoke the Arbitration Agreement because the claims against him are not related to the Terms of Use and do not require interpretation of the Terms of Use. In *Britton v. Co-op Banking Grp*., 4 F.3d 742, 748 (9th Cir. 1993), on which Plaintiff relies, the plaintiff's allegations against the officer director were "that he in some way attempted to defraud the investors into not pursuing their law suits [sic] against the persons who originally sold the securities under the contract." The Ninth Circuit held these "subsequent, independent acts of fraud, unrelated to any provision or interpretation of the contract" did not provide standing to compel arbitration regardless of his status as an agent. *Id*. at 748.[2] Not so here. Plaintiff's allegations as to Mr. Shroder are he directed Biance U.S.'s alleged violations of the Securities Act and among other things he is liable for damages "inclusive of

---

[2] Plaintiff's reliance on the California Court of Appeals unpublished decision in *Newstyle Cap. Inv. Mgmt. (Hong Kong) Ltd. v. Mobile Gaming Techs., Inc*., No. A159013, 2021 WL 2176857 (Cal. Ct. App. May 28, 2021), is improper. *See Olive v. Gen. Nutrition Centers, Inc.,* 30 Cal. App. 5th 804, 816 n. 6 (2018) ("California Rules of Court, rule 8.1115 prohibits the citation of unpublished California state opinions, with certain limited exceptions inapplicable here.").

United States District Court
Northern District of California

transaction fees" which necessarily implicates and relies on the Terms of Use.  (Dkt. No. 36 at ¶ ¶ 215, 218; *see also* ¶ 268 ("Shroder purposefully exercised his power and influence to cause Binance U.S. to violate the Exchange Act as described herein, including by (1) operating unregistered exchanges and, in the course of operating such exchanges, entering unlawful contracts to sell UST and to receive transaction fees for sales of UST").)

Accordingly, Mr. Shroder may invoke the Arbitration Agreement to compel arbitration of the claims against him under an agency theory.

### B.    Equitable Estoppel

Alternatively, Mr. Shroder may compel arbitration under an equitable estoppel theory. "Generally, in the arbitration context, equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (cleaned up).  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer*, 705 F.3d at 1128 (internal citation omitted).

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Kramer*, 705 F.3d at 1128-29 (cleaned up).

Plaintiff insists any allegations of interdependent misconduct are not based on any obligations under the Terms of Use and Plaintiff's securities claims against Shroeder are "fully viable without reference to the Terms." (Dkt. No. 48 at 30.)  Not so.  Equitable estoppel applies here for the same reasons as agency. Plaintiff's second claim for relief alleges "Shroder is jointly and severally liable for the violations of the Securities Act by Binance U.S. complained of herein

United States District Court
Northern District of California

24

1 and is liable to Plaintiff and the Class for damages, inclusive of transaction fees, as to each

2 transaction in which any UST purchased in the Class Period was subsequently sold at a loss."

3 (Dkt. 36 at ¶ 218.)  Each such transaction occurred pursuant to the Terms of Use and the

4 transaction fees are governed by the Terms of Use.  Plaintiff's claim is not viable without

5 reference to and consideration of the Terms of Use.  The same is equally true for the other claims

6 pled against Mr. Shroder.  (Dkt. No. 36 at ¶¶ 268, 296.)  Accordingly, equitable estoppel applies.

7 **V.      WHETHER THE COURT SHOULD STAY OR DISMISS**

8          Defendants contend dismissal, rather than a stay, is appropriate if the Court grants their

9 motion to compel.

10         "Section three of the FAA provides that, upon determination by a court that an issue or

11 issues are referable to arbitration, the court, on application of a party, 'shall' stay the trial of the

12 action pending arbitration (provided the stay applicant is not in default)."  *Forrest v. Spizzirri*, 62

13 F.4th 1201, 1204 (9th Cir. 2023) (citing 9 U.S.C. § 3).  The Ninth Circuit has carved out an

14 exception to this plain language, holding "notwithstanding the language of [section three], a

15 district court may either stay the action or dismiss it outright when, as here, the court determines

16 that all of the claims raised in the action are subject to arbitration."  *Id.* at 1204–05 (quoting

17 *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (alterations in

18 original)).  The Supreme Court recently granted certiorari regarding this issue.  *See Smith v.*

19 *Spizzirri*, ––– U.S. ––––, 144 S.Ct. 680, 217 L.Ed.2d 341 (2024); *see* Petition for a Writ of

20 Certiorari, *Spizzirri*, 2024 WL 133822, 2023 WL 4108513, at *i. (Question presented: "Whether

21 Section 3 of the FAA requires district courts to stay a lawsuit pending arbitration, or whether

22 district courts have discretion to dismiss when all claims are subject to arbitration.").

23         The Court, in its discretion, stays this action pending arbitration.

24                                            **CONCLUSION**

25         For the reasons stated above, Defendants' motion to compel arbitration is GRANTED.

26 This action is stayed pending arbitration.  On or before December 1, 2024, the parties shall jointly

27 provide the Court with a written update on the status of arbitration.

28         //

United States District Court
Northern District of California

25

This Order disposes of Docket No. 40.

**IT IS SO ORDERED.**

Dated:  April 26, 2024

JACQUELINE SCOTT CORLEY
United States District Judge